## Richmond

THOMAS EUGENE GREEN

V.

COMMONWEALTH OF VIRGINIA

June 18, 1982.

Record No. 810538.

Present: All the Justices.

*Randolph L. Herring* for appellant.

*Jerry P. Slonaker, Assistant Attorney General (Gerald L. Baliles, Attorney General,* on brief), for appellee.

STEPHENSON, J., delivered the opinion of the Court.

Tried without a jury, Thomas Eugene Green was found guilty of three robberies, two grand larcenies and one attempted rape and sentenced to a total of 80 years in the penitentiary. In this appeal, we consider whether the trial court erred in refusing to suppress Green's confession and certain evidence seized in a search, and whether the evidence is sufficient to support the attempted rape conviction.

On September 19, 1980, Detectives Andrews and Houchins of the Richmond City Police Department went to Thompson Middle School to arrest Green, a 15-year-old student. The principal had Green come to his office. Andrews, reading from the standard form, immediately advised Green of his "*Miranda* rights" and told him he was a suspect in a "purse snatching." The detectives instructed Green not to make any statement at that time, instead sending for Green's mother, who was employed at the school.

In approximately five minutes, Green's mother arrived and was advised of the situation. Andrews informed her he would like to search her apartment, and Mrs. Green replied, "Well, let me get somebody to drive my school bus, and I will go with you."

Andrews drove Mrs. Green in one vehicle and Houchins transported Green in another. On the way to the apartment, Houchins again admonished Green not to make any statement about the case, and none was made. However, Mrs. Green told Andrews she had informed Green's probation officer that recently Green had a lot of money and had purchased a number of items. Andrews stated Mrs. Green "was more than helpful."

When Andrews and Mrs. Green entered the house, he told her he had a search warrant,[1] and he could proceed by either executing the warrant or obtaining permisson to search. Mrs. Green signed a statement consenting to the search. It read that the consent was being given voluntarily, and that no threats or promises had been made.

---

[1] The search warrant and its supporting affidavit were introduced into evidence without defense objection. The trial court stated the documents appeared to be proper, and, upon inquiry, Green's counsel could not point to any irregularities.

Following the execution of the consent statement, Mrs. Green told her son to give the officers eveything that did not belong to him. The detectives saw a clock-radio which matched the description of a stolen item, and Green started volunteering information. The officers stopped him, and, in the presence of his mother, again advised Green of his rights. Green was told he was being charged with several breaking and enterings, robberies, assaults, sodomies, rapes and attempted rapes.

Green told the officers the clock-radio had come from "an elderly woman's home." He then produced other property from the apartment and led the detectives to an abandoned house where he pointed out other stolen items.

The detectives took custody of the clock-radio and the other items and informed Green's mother they were going to take Green to police headquarters and interview him and then transport him to the juvenile detention home. They asked Mrs. Green if she wanted to go with them, but she declined.

On their way to police headquarters, Andrews asked Green if he would take him to the various locations from which Green had taken property. The defendant agreed and gave Andrews directions. Green pointed out seven or eight locations and, at each one, briefly related what had happened.

At police headquarters, Andrews advised Green of his rights for the third time. Green said he understood them and executed a written statement to that effect. Andrews then asked Green if he understood the offenses he was suspected of committing, and Green was able to define the terms.[2] Thereupon, Green made an incriminating statement with respect to the various offenses. This interview was recorded.

Green's only evidence at the suppression hearing consisted of a psychological report prepared by a court psychologist and a psychiatric report prepared by a doctor at the Medical College of Virginia. These reports indicated that Green was of low intelligence. However, the psychiatrist stated Green's limited intelligence was "not enough to even suggest interference with competency before the court."

Green's prior exposure to the criminal justice system included juvenile petitions charging vandalism, assault, carrying a con-

---

[2] For example, Green described "purse snatching" as when "you run up behind somebody and snatch their pocketbook and run," robbery as "you beat somebody up and take their money," and burglary as "breaking in somebody [sic] house."

cealed weapon, petit larceny, breaking and entering, grand larceny and automobile theft. He had been previously committed to the Department of Corrections.

Green contends the trial court erred in refusing to suppress his incriminating statements. He argues he did not knowingly and voluntarily waive his rights.

█ The burden is on the Commonwealth to demonstrate the defendant knowingly and intelligently waived his privilege against self-incrimination. *Miranda* v. *Arizona,* 384 U.S. 436, 475 (1966). "[T]he question of waiver must be determined on 'the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" *North Carolina* v. *Butler,* 441 U.S. 369, 374-75 (1979). This determination, based on the totality of the circumstances, is the same when a juvenile is involved. *Fare* v. *Michael C.,* 442 U.S. 707 (1979). *See also Harris* v. *Commonwealth,* 217 Va. 715, 232 S.E.2d 751 (1977).

█ In the present case, Green was advised of his rights not once, but three times. Twice, the detectives cautioned him not to make a statement without his mother's presence. While the evidence reveals he is of limited intelligence, there is nothing to suggest Green was incapable of understanding his rights. The transcript of the recorded statement shows he understood the charges against him. Further, the evidence demonstrates Green displayed cunning in committing his crimes. Finally, he had previous exposure to the criminal justice system.

From the totality of the circumstances, the trial court concluded Green understood his rights and that he knowingly and voluntarily waived them. We are of opinion the evidence supports this finding. Indeed, it appears the police exercised the greatest care in seeing Green's rights were protected, and we hold his statements were properly admitted.

█ In his second assignment of error, Green argues his mother's consent for the police to search the apartment was invalid. Relying on *Bumper* v. *North Carolina,* 391 U.S. 543 (1968), he argues the consent was coerced because the officers had a warrant. This reliance is misplaced.

In *Bumper,* the occupant of the premises acquiesced to a search after the officers informed her they had a warrant. In the present case, Mrs. Green consented to the search of her apartment while still at the school. She was not aware of the existence of the war-

rant at that time. The signing of the consent form at the apartment was a mere formality.

All the evidence reveals Mrs. Green sought to cooperate with the police to the fullest extent. She volunteered information and urged her son to do the same. There is no evidence the permission to search the apartment was coerced.

■ Finally, Green contends the evidence is insufficient as a matter of law to support his conviction for attempted rape. He argues there was no proof of a specific intent to rape.

Green went to the victim's home and rang the doorbell. When the 65-year-old woman opened the door, he identified himself as the new paperboy and offered to leave his name and address, but said he had no pencil. When the woman went to get one, Green stepped inside the door. He wrote down a fictitious name and telephone number. At that point, he grabbed her by her arms and pushed her toward the den.

In the den, Green threw the woman on the floor, pulled up her dress, and pulled her pants halfway down. He demanded her pocketbook, and she said it was in the bedroom. He then pulled her off the floor and pushed her to the other room. In the bedroom, Green shoved the victim on the bed, covered her head with a bedspread, and removed the money from her pocketbook. He then unzipped her dress and removed her bra, tearing the hooks from the garment. He threw her on the floor, pulled her pants down and got on top of her. At this point, the victim's husband walked into the house, and Green, hearing him, ran out the front door.

The facts in the present case are similar to those in *Ingram* v. *Commonwealth*, 192 Va. 794, 66 S.E.2d 846 (1951). There, the defendant entered the home of the prosecutrix, threw her down and choked her. When a neighbor responded to her screams, the defendant fled. Holding the evidence sufficient to sustain a conviction for attempted rape, we said:

> For what purpose would a man attack a defenseless woman, at night, dressed in her night clothes? Inferences and deductions from human conduct may be properly drawn when they follow naturally from facts proven. In this case, the conduct of the accused, under the conditions and circumstances described, points with reasonable, if not with unerring certainty, to his specific intent to commit rape. It is in-

consistent with his innocence, or with any interpretation save that of such an intent.

*Id.* at 803, 66 S.E.2d at 851.

We should not set aside a verdict "unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it." Code § 8.01-680. On appeal, the evidence and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the Commonwealth. *Carter v. Commonwealth,* 223 Va. 528, 532, 290 S.E.2d 865, 867 (1982). When so viewed, the evidence in the present case is sufficient to support the conviction for attempted rape.

For the reasons expressed herein, the judgment of the trial court will be affirmed.

*Affirmed.*