## Alexandria

### LEON P. SMITH

v.

### COMMONWEALTH OF VIRGINIA

No. 0063-87-4

Decided October 18, 1988

Counsel

John W. Wine, for appellant.

H. Elizabeth Shaffer, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

Opinion

BAKER, J. — This is an appeal from a judgment of the Circuit Court of Fauquier County (trial court) which approved a jury verdict convicting Leon P. Smith (appellant) of first degree murder, aggravated sexual battery and abduction. Appellant asserts that the trial court erred in permitting the jury to hear and consider evidence at trial of the inculpatory statements made by him to investigating police officers, and alleges that his convictions should be reversed for the following reasons: (1) that though advised of his privilege against self-incrimination, he did not make a knowing and intelligent waiver of his rights; (2) that the statements were not voluntarily made; (3) that prior to making the statements he was not made aware of the possibility that he subsequently would be prosecuted; (4) that the erroneous admission of any one of the statements into evidence was not harmless beyond a reasonable doubt; and (5) that as appellant was only 15 years old at the time of the offense the harmless error doctrine should not be invoked.

 On appeal we must consider the evidence in the light most favorable to the Commonwealth, granting to it "all reasonable inferences fairly deducible therefrom." *Boykins v. Commonwealth*, 210 Va. 309, 311, 170 S.E.2d 771, 773 (1969). The record discloses that at approximately 6:30 p.m. on August 5, 1985, the body of Melissa Bushrod (victim), a 12-year-old girl, was found in

woods near her home. The victim's aunt, Marilyn Stewart, came to the Bushrod home shortly before 5:00 p.m., and, not finding the victim there, went to look for her in the nearby woods. As she entered the woods she heard a "smashing sound" and then observed appellant, wearing an orange T-shirt, running from the direction from which the sounds had emanated. Rosemary Bushrod, the victim's grandmother, came upon the scene and was told by appellant that the victim had gone up the road. After entering the woods and finding the victim's panties, Mrs. Bushrod sought the help of her son-in-law, George, who found the victim, dead, lying amidst a bloody scene in a creek in the woods, her head split open. The victim was partially clothed, her "bottom bare." Pieces of her skin and pieces of her fingernails had been ripped. Immediately adjacent to her face were large rocks with blood on them. The cause of death was trauma associated with skull fracture.

Appellant made substantially the same statements on three distinct occasions. Shortly after the victim's body was found Officers Grant, Waddell and Rogers interviewed appellant at his home. He came to the door clad only in pajamas. Immediately upon approaching appellant, Grant and Waddell advised him that he was under arrest for murder and, prior to any inquiry, advised him of his "rights under *Miranda*" as contained on a card read into evidence. That card, referred to on several occasions, contained the following language:

> You have the right to remain silent. Anything you say can and will be used against you in a Court of law. You have the right to talk to a lawyer and have him present with you while you are being questioned. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning, if you wish. You can decide at any time to exercise these rights and not answer any questions or make any statements.

Grant then asked appellant if he wanted to make a statement. To that inquiry appellant responded: "prove it." With permission of appellant and his father, Grant and Waddell accompanied appellant to his room to enable him to change into street clothes. In plain view, draped over a chair, were the clothes appellant identified as being those he wore at the time the victim was murdered, one item being a "yellow/orangeish shirt." On one of these arti-

cles and on one of appellant's shoes blood was found which was consistent with the blood of the victim and inconsistent with the blood of appellant and the co-defendant. After appellant dressed he was handcuffed and taken to a police car. The officers explained to appellant's parents that he was under arrest for murder, that he was being taken to the county sheriff's office, and that they could be present when he was questioned. Neither parent immediately followed the police to that office.

The second interview occurred when only Officer Grant and appellant were in the police car which transported appellant to the sheriff's office. En route, Grant asked appellant if he understood that he did not have to make a statement or answer questions without a lawyer being present. Appellant indicated that he understood and proceeded to tell Grant that after having sex with the victim he struck her with rocks at least twice; that he choked her; that he and co-defendant King dragged her down a hill to a ditch; and that when they left her she was dead.

At the sheriff's office Grant took appellant to the sheriff's room and again advised him of his *Miranda* rights. Grant concluded from appellant's answers to his inquiries relative to whether appellant understood his rights that appellant did understand that he did not have to answer Grant's questions and was entitled to have an attorney present when he was questioned. Grant then asked appellant if he wished to make a statement and appellant responded, "No, sir." However, appellant shortly thereafter proceeded to repeat the basic facts contained in the statement made en route to the sheriff's office.

Appellant was then placed in the custody of Lt. Stalls and Investigator Bright and was taken to their office. They did not know that appellant had made a statement to Grant. Once more appellant was advised of his *Miranda* rights, this time by Bright reading them to him from the standard card. After appellant indicated that he understood his rights he basically gave the same confession to them as he had given to Grant.

The record further discloses that the trial court afforded appellant complete opportunity to refute the Commonwealth's evidence at a suppression hearing and the inculpatory statements were admitted at trial only after that hearing was conducted. If admissible, any one of the statements made by appellant, considered with

the other evidence, was sufficient to support his convictions. Thus, the sufficiency of the evidence would only be an issue on this appeal if the trial court were constitutionally barred from admitting into evidence the statements made by appellant.

■■■ The burden is on the Commonwealth to demonstrate that appellant knowingly and intelligently waived his privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 475 (1966); *Green v. Commonwealth*, 223 Va. 706, 710, 292 S.E.2d 605, 607 (1982). The question of waiver must be determined on the particular facts and circumstances of each case, including the background, experience, and conduct of the accused. This determination, based on the totality of the circumstances, is the same when a juvenile is involved. *Green*, 223 Va. at 710, 292 S.E.2d at 607-08; *see also Fare v. Michael C.*, 442 U.S. 707 (1979); *Harris v. Commonwealth*, 217 Va. 715, 232 S.E.2d 751 (1977). While the ultimate issue — whether the confession was voluntary — is a legal question, "subsidiary factual questions are entitled to a presumption of correctness." *Williams v. Commonwealth*, 234 Va. 168, 172, 360 S.E.2d 361, 364 (1987), *cert. denied*, 108 S. Ct. 733 (1988). The trial court's finding on the issue of voluntariness is entitled to the same weight as a fact found by a jury, and that finding will not be disturbed on appeal unless plainly wrong. *Id.* We find that the evidence supports the judgment of the trial court that the statements were admissible.

The record discloses that appellant was advised of his rights several times in different locations and by at least two different officers out of each other's presence. Following each warning, appellant chose to give an account of the cause of the victim's death which clearly proved his guilt of each crime for which he stands convicted. There is no evidence of police intimidation, subtle or otherwise, which could reasonably be said to overcome appellant's free choice. There is no evidence that appellant was "threatened, tricked or cajoled." In fact, appellant declined the police offer to have his parents present when questioned at the sheriff's office. At no time did appellant request that an attorney be appointed or present when questioned. His response for the police to "prove it" when they advised him that he was being arrested for murder was neither a request for counsel nor an assertion of his right to remain silent. While a direct, formal request for counsel or the assertion of the right to remain silent is not required, we hold that

appellant's response, "prove it" was simply a non-responsive exclamation that was insufficient to cut-off further questioning.

When appellant was being questioned by Grant at the sheriff's room, he was asked:

At this time, being advised of your rights, and under no duress or any promise from me whatsoever, would you like to make a statement to me in regard to this incident?

When appellant answered, "No, sir," Grant then asked:

Do you want to tell me what happened this evening prior to the time that Trooper Rogers and I placed you under arrest?

In view of appellant's prior admissions, the trial court reasonably interpreted the latter question as one of clarification. *See United States v. Riggs*, 537 F.2d 1219 (4th Cir. 1976); *cf. Smith v. Illinois*, 469 U.S. 91, 96 (1984) (per curiam) (referring to the significance of prior statements). We find that viewing the totality of the circumstances and particular facts disclosed by this record, the evidence is sufficient to support the trial court's judgment that appellant was fully advised of his rights and by his conduct and statements waived his privilege against self-incrimination.

At the time appellant was being placed in a police car to be transported from his home to the sheriff's office, appellant's parents were advised that appellant was being arrested on a charge of murder; that he was being taken to the sheriff's office; and that they could go with him. Although the parents did not accompany appellant and Grant at that time, they came to the sheriff's office later that same evening. When appellant was told of their presence he refused to either see them or permit them to be present in the room where he was being questioned. There is nothing in this record to create even a suspicion that appellant was not in possession of his full wits and intelligence, or that the police intimidated him or excessively questioned him over a long period of time. The entire procedure from appellant's home to his last interrogation by Officer Bright was prompt, efficient and properly conducted, including great care to assure that appellant was advised of his rights and privileges. There is, in fact, evidence that appellant was alert and coherent during the entire process. We find that there is sufficient evidence to support the trial court's finding that the in-

culpatory statements made by appellant were voluntarily given.

Appellant submits the further question: Was appellant, or should he have been, aware of the possibility of subsequent criminal prosecution? Assuming for purposes of argument that a suspect is entitled to an independent warning that prosecution is possible, we answer in the affirmative. He was told when arrested that he was being charged with murder. He was specifically told that it involved the death of the victim. He was advised by Officer Grant and then separately by Officer Bright that "anything you say can and will be used against you in a court of law." We find the totality of the evidence to be sufficient to support the judgment of the trial court on this subject. *See Colorado v. Spring*, 479 U.S. 564 (1987); *Harris v. Riddle*, 551 F.2d 936 (4th Cir.), *cert. denied sub nom. Harris v. Zahradnick*, 434 U.S. 849 (1977).

Finally, appellant asks: "Does the doctrine of harmless error apply to a juvenile being tried as an adult as regards Fifth or Sixth Amendment rights?" The harmless error doctrine may be invoked only when the court has determined there is error. Having concluded that there is no error, we deem it unnecessary to respond to that assignment of error by appellant.

For the reasons stated, the judgment of the trial court is

*Affirmed.*

Duff, J., and Cole, J., concurred.