KENNETH L. WILSON

V.

COMMONWEALTH OF VIRGINIA

Record Nos. 940533 and 940674

January 13, 1995

Present: All the Justices

James E. Ellenson (Lyn M. Simmons, on brief), for appellant.

*Richard B. Smith, Assistant Attorney General (James S. Gilmore, III, Attorney General*, on brief), for appellee.

JUSTICE LACY delivered the opinion of the Court.

In this appeal, we review the capital murder conviction and death penalty imposed upon Kenneth L. Wilson, along with his convictions for attempted rape, grand larceny, two counts of malicious wounding, and three counts of abduction, all arising from the same series of events.

## I. Proceedings

Wilson was tried upon indictments charging capital murder, attempted rape, grand larceny, two counts of malicious wounding, two counts of abduction, and one count of abduction with intent to defile. Code §§ 18.2-31(5), -47, -48, -51, -67.5, and -95. At the conclusion of the first stage of a bifurcated jury trial conducted pursuant to Code §§ 19.2-264.3 and -264.4, the jury convicted Wilson of all offenses. The jury fixed the following sentences: 10 years imprisonment for attempted rape; 12 months in jail and a $2,500 fine for grand larceny; 10 and 20 years imprisonment for the two counts of malicious wounding; and 10, 10, and 35 years for the three counts of abduction.

At the penalty phase of the capital murder trial, the jury heard evidence on aggravating and mitigating circumstances and fixed Wilson's punishment at death, based upon both the vileness and future dangerousness predicates. After considering the probation officer's report and conducting a sentencing hearing, the trial court imposed all the sentences fixed by the jury.

We have consolidated Wilson's appeal of the capital murder conviction in Record No. 940533 with the automatic review of his death sentence to which he is entitled, Code §§ 17-110.1(A) and -110.1(F), and have given them priority on our docket. Code § 17-110.2. We have also certified Wilson's appeal of his non-capital murder convictions from the Court of Appeals, Record No. 940674, and have consolidated the two appeals for consideration.

## II. The Evidence

We review the evidence in the light most favorable to the Commonwealth, the prevailing party at trial.

Around 3:00 a.m. on March 27, 1993, Wilson entered the home of the decedent, Jacqueline M. Stephens, where she lived with her 12-year-old daughter, Altomika. Takeshia Banks, a 14-year-old friend of Altomika's, was spending the night in the Stephens' home. Ms. Stephens, Altomika, and Takeshia each knew Wilson, who lived next door and was a cousin of Altomika's father, Alton "Pinkey" Bumpers.

Ms. Stephens, clothed in a bathrobe, confronted Wilson and repeatedly insisted that he leave. He refused and put a knife to her throat. Although Altomika was frightened and began to run for help, she returned when Wilson threatened to kill her mother if she left.

Wilson forced everyone upstairs. Altomika and Takeshia were ordered into Altomika's bedroom and Wilson took Ms. Stephens into her bedroom. While with Wilson, Altomika heard her mother say, "Kenny, why you doing this to me? I go with Pinkey, why you doing this to me?" Approximately 25 minutes later, Ms. Stephens and Wilson went to the girls' room. Wilson ordered Ms. Stephens to tell the girls not to say anything and she obeyed. Ms. Stephens then proceeded to take a shower.

While Ms. Stephens was in the shower, Wilson took Altomika to her mother's bedroom and tied her to the bed. He returned to the other bedroom, ordered Takeshia to disrobe, and tied her to the bed. Shortly thereafter, Wilson retrieved Altomika, tied her to the bed with Takeshia, and blindfolded each girl. During this time, a next door neighbor, who heard unusual noises coming from the Stephens' home, repeatedly knocked on the Stephens' door. No one answered, but at one point the neighbor saw Wilson, whom he recognized, looking out of Ms. Stephens' bedroom window.

Ms. Stephens, still in the shower, asked Wilson if she could get out, but was ordered to remain where she was. Wilson then proceeded to stab and cut both girls. He stabbed Altomika in the throat and twisted the knife. Wilson was naked as he assaulted the girls. During the attack, Takeshia began to scream. Ms. Stephens left the shower and confronted Wilson in the hallway. Altomika then heard a sound which she believed was her mother falling down the stairs.

While Wilson was out of the room, the girls untied themselves from the bed, locked the bedroom door, and pushed a dresser against it. Wilson returned with Ms. Stephens and ordered her to

tell the girls to unlock the door or he would kill her. The girls complied and Wilson then ordered Ms. Stephens to instruct the girls to tie themselves back up. Wilson secured their bindings more tightly, again blindfolded them, and gagged them with dirty socks and underwear. He then left the room with Ms. Stephens.

Altomika testified that she heard Wilson demanding, "Where your car keys at? Where your car keys at? You can talk, talk." Altomika did not hear any response. She then heard Wilson go downstairs, open and shut the door, and say, "Ha, ha, you all think I'm going. I ain't going nowhere." Wilson then began laughing and returned to the girls' bedroom. Although the girls were still blindfolded, Altomika testified that Wilson said, "I know you all can see," as he "played" with a knife in front of the girls' faces. Frightened, Takeshia began moving and screaming. Wilson responded, "You thought I was going to stab you again. I was just trying to scare you."

Wilson left the girls and renewed his demands to Ms. Stephens, "Where are your keys? You better give them to me." Altomika testified that Ms. Stephens suddenly began screaming and then "all of a sudden she just stopped screaming." Soon after, Wilson came into the girls' room, threatening, "If you all tell anybody I'll kill you all. If the police come, you all tell them somebody broke in. I'm going to go call the police for you all." He then left the house.

The neighbor saw Wilson leave the Stephens' home and drive away in Ms. Stephens' vehicle at approximately 6:30 a.m. Immediately thereafter, the neighbor summoned the police. Before the police arrived, Altomika called to her mother but received no answer. Takeshia testified that all she could hear was Ms. Stephens' coughing. When the police arrived, they found Ms. Stephens' body tied to her bed, arms and legs spread apart, and covered with blood. Pubic hairs and a dried white substance that appeared to be semen were observed on her body. Two knives, one blade badly bent, were found lying on the floor at the foot of the bed.

At trial, the medical examiner who performed the autopsy testified that Ms. Stephens had at least ten knife wounds, including two stab wounds to the chest, either of which would have been independently fatal. In addition, Ms. Stephens suffered several longitudinal cuts to the throat. Internal bleeding from the stab wounds to the chest was determined to be the cause of death. The

medical examiner stated that none of Ms. Stephens' injuries would have rendered her unconscious during the attack.

## III. Issues Not Preserved for Appeal

█ Wilson's assignments of error 3, 4, 5, 6, 7, and 8 state constitutional challenges to: lack of direction for the jury's discretion regarding "vileness" and "future dangerousness" factors; the vagueness of such factors; the use of prior convictions in sentencing; the death penalty; death by electrocution; and lack of adequate instructions on mitigation. These issues were not raised before the trial court and, therefore, cannot be considered here. Rule 5:25; *Bunch v. Commonwealth*, 225 Va. 423, 434, 304 S.E.2d 271, 278, *cert. denied*, 464 U.S. 977 (1983).

## IV. The Guilt Phase Issues

### A. Attempted Rape

Wilson contends that the evidence is insufficient to sustain his conviction of attempted rape. He asserts that the evidence fails to prove the necessary elements of intent to rape or an overt act beyond preparation.

█ Rape is defined as "sexual intercourse against the victim's will by force, threat, or intimidation." *Hoke v. Commonwealth*, 237 Va. 303, 310, 377 S.E.2d 595, 599, *cert. denied*, 491 U.S. 910 (1989); *see also* Code § 18.2-61. To establish an attempt to commit rape, the Commonwealth must prove (1) an intent to commit the crime, and (2) some direct, but ineffectual, act toward its commission sufficient to amount to the commencement of the consummation of the crime. *Wright v. Commonwealth*, 245 Va. 177, 193, 427 S.E.2d 379, 390 (1993), *vacated and remanded on other grounds*, ___ U.S. ___, 114 S.Ct. 2701, *aff'd on remand*, 248 Va. 485, 450 S.E.2d 361 (1994) (citing *Chittum v. Commonwealth*, 211 Va. 12, 15, 174 S.E.2d 779, 781 (1970)).

### 1. Intent

Wilson argues that the evidence does not show that he possessed the intent to commit rape. First, Wilson asserts that cases of attempted rape usually involve evidence of statements showing an intent to engage in the sex act. *See, e.g., Chittum*, 211 Va. at 16, 174 S.E.2d at 781 (victim ordered to lie down and defendant stated that he would "be gentle"); *Granberry v. Commonwealth*,

184 Va. 674, 676, 36 S.E.2d 547, 547 (1946) (victim instructed to lie down, pull up dress, and take down pants). Therefore, Wilson argues that, because there is no evidence that he made any statements showing an intent to engage in sex, the required intent was not proven. In addition, Wilson states that an intent to commit rape cannot be inferred in the instant case because the facts clearly evidence an intent to murder, not to rape. *See Ingram v. Commonwealth*, 192 Va. 794, 803, 66 S.E.2d 846, 851 (1951).

■ Although we agree that Wilson intended to murder Ms. Stephens, we do not subscribe to his assertion that a statement evidencing his intent to rape her is necessary to establish the requisite intent. "Intent is a state of mind that may be proved by an accused's acts or by his statements and that may be shown by circumstantial evidence." *Wright*, 245 Va. at 193, 427 S.E.2d at 390 (citing *Barrett v. Commonwealth*, 210 Va. 153, 156, 169 S.E.2d 449, 451 (1969)). The specific intent to commit rape may be inferred from the conduct of the accused if such intent flows naturally from the conduct proven. *Green v. Commonwealth*, 223 Va. 706, 711, 292 S.E.2d 605, 608 (1982). Where the conduct of the accused under the circumstances involved points with reasonable certainty to a specific intent to commit rape, the intent element is established. *Id.* at 711, 292 S.E.2d at 608-09.

■ The evidence shows that Wilson separated the girls from Ms. Stephens, forced her into her bedroom, removed all of his clothes, and bound her naked to the bed. At one point, Ms. Stephens exclaimed, "Kenny, why you doing this to me? I go with Pinkey, why you doing this to me?" Although Wilson excepted to the trial court's rulings concerning the admissibility and use of the decedent's statement, the statement is clearly and fully admissible under the excited utterance exception to the hearsay rule. This evidence and the inferences therefrom are sufficient to support the jury's finding of Wilson's intent to rape Ms. Stephens.

## 2. Acts Toward Commission

Wilson also argues that the evidence does not show a direct but ineffectual act done toward the commission of the rape which reaches far enough to amount to the commencement of the crime. We disagree.

Although the evidence does not indicate that Wilson committed the last act necessary to complete a rape, the act necessarily proven "need not be the last proximate act to the consummation

of the crime in contemplation." *Granberry*, 184 Va. at 678, 36 S.E.2d at 548. The combined evidence of (1) Wilson's nudity, (2) Wilson's isolating Ms. Stephens from the girls to prevent them from interrupting his actions with her, (3) his forcibly binding Ms. Stephens, naked and on her back, to her bed, and (4) what appeared to be pubic hairs and semen found on her body, sufficiently establishes direct acts done toward the commission of rape.

■ Because the evidence shows both an intent to rape and acts toward the commission of rape, we hold that the evidence is sufficient to sustain Wilson's attempted rape conviction.

## B. Capital Murder

■ Wilson contends that the evidence is insufficient to support his capital murder conviction because the evidence is insufficient to sustain a conviction for the predicate crime of attempted rape. As previously discussed, the evidence is sufficient to sustain the conviction of attempted rape and, therefore, to provide the necessary predicate for the capital murder conviction.

## C. Grand Larceny

Wilson argues that the evidence is insufficient to support his grand larceny conviction because he "asked" the decedent for the keys to her vehicle. Thus, Wilson contends, the taking was not against Ms. Stephens' will. This argument is not supported by the facts or the law.

■ The evidence shows that just before murdering Ms. Stephens, Wilson demanded, "Where are your keys? You better give them to me." Although Wilson suggests that his statement was actually a "request" to which the decedent freely agreed, the jury could reasonably find that his words conveyed a demand. Grand larceny requires a showing that Wilson committed a simple larceny, not from the person of another, of goods or chattels valued at $200 or more. Code § 18.2-95. Therefore, we hold that the evidence is sufficient to support such a taking and the jury's finding.

## D. Malicious Wounding

Wilson contends that the evidence is insufficient to support his convictions for malicious wounding. He argues that because Altomika and Takeshia were blindfolded when they were at-

tacked, and because he claims that there was another intruder in the house who committed the criminal acts, the girls' testimony that Wilson was the attacker is inherently incredible. We disagree.

■ Although Wilson claims that there was another intruder in the Stephens' house who committed the criminal acts, both girls testified that Wilson was in fact the only intruder. The girls testified that they were still able to see such things as their attacker's shoes, even though blindfolded. Altomika could see enough to accurately describe the knife Wilson used to attack them. Although the girls may not have seen Wilson's face as he attacked them, they knew from his voice that he was the attacker. Moreover, Takeshia testified that before leaving the house, Wilson admitted that he had stabbed her. The girls' testimony was not incredible and the jury was entitled to believe their statements regarding the events.

### E.  Abduction

Wilson next contends that the evidence is insufficient to support his convictions for the three counts of abduction. He alleges that, because the girls were blindfolded, their testimony that he tied them up is speculative and inherently incredible. He further asserts that, because there was no evidence of who tied Ms. Stephens to her bed, and because he denies all involvement, a finding that he was responsible is speculative. Again, we disagree.

■ The evidence clearly supports the jury's finding that Wilson abducted Takeshia and Altomika. Code § 18.2-47 provides that "[a]ny person, who, by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes the person of another, with the intent to deprive such other person of [her] personal liberty . . . shall be deemed guilty of 'abduction.' " Wilson's initial act of forcing the girls upstairs at knifepoint satisfies the elements of this crime. *See Scott v. Commonwealth*, 228 Va. 519, 526, 323 S.E.2d 572, 576 (1984) (construing statute).

■ In the case of Ms. Stephens, Wilson was convicted of abduction with the intent to defile. In addition to the above elements necessary to convict for abduction, the jury was required to find that Wilson abducted Ms. Stephens with the intent to sexually molest her. Code § 18.2-48. Based upon the surrounding circum-

stances, as previously addressed, the jury was justified in finding that Wilson abducted Ms. Stephens with the intent to defile her.

## V. The Penalty Phase

▮ Wilson contends that the trial court erred in refusing to inform the jury of Virginia's laws regarding parole eligibility.[1] We repeatedly have rejected this argument in capital murder cases. *See, e.g., Mueller v. Commonwealth*, 244 Va. 386, 409, 422 S.E.2d 380, 394 (1992), *cert. denied*, 507 U.S. ____, 113 S.Ct. 1880 (1993); *King v. Commonwealth*, 243 Va. 353, 367-68, 416 S.E.2d 669, 677, *cert. denied*, 506 U.S. ____, 113 S.Ct. 417 (1992); *Eaton v. Commonwealth*, 240 Va. 236, 248-49, 397 S.E.2d 385, 392-93 (1990), *cert. denied*, 502 U.S. 824 (1991). Adhering to our previous rulings, we reject Wilson's contention.[2]

## VI. Sentence Review

Pursuant to Code § 17-110.1, we must review Wilson's death sentence to consider and determine whether:

1. the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor; and

2. the sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

### A. Passion, Prejudice, or Any Other Arbitrary Factor

Wilson asserts only one basis for claiming that the death sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor. He claims that "at best [the] equivocal nature of the evidence" indicates that the guilty verdicts rested on

---

[1] In addressing this assignment of error, Wilson also argues that the trial court improperly excluded the testimony of a Virginia inmate who is currently serving a life sentence for capital murder. Wilson did not assign error to this evidentiary ruling, however, and we cannot consider this argument for the first time on appeal. Rules 5:21(i), 5:25.

[2] We note that the U.S. Supreme Court's recent holding in *Simmons v. South Carolina*, 512 U.S. ____, 114 S.Ct. 2187 (1994), does not apply to the instant case. In *Simmons*, the Supreme Court held that, when "future dangerousness" is at issue in the sentencing phase of a capital murder case, the jury is entitled to be informed of the defendant's parole *ineligibility. Id.* at ____, 114 S.Ct. at 2198. Because Wilson would have been eligible for parole, *Simmons* does not affect our ruling on this issue. *Wright v. Commonwealth*, 248 Va. 485, 450 S.E.2d 361 (1994); *Ramdass v. Commonwealth*, 248 Va. 518, 450 S.E.2d 360 (1994).

impermissible grounds. As previously discussed, however, the evidence fully supports the jury's findings.

■ Pursuant to Code § 17-110.1, we have reviewed the record and cannot conclude that the jury, in imposing the death sentence, was influenced by passion, prejudice, or any other arbitrary factor. Wilson does not contend that the evidence is insufficient to support a finding of both the "vileness" and the "future dangerousness" predicates, and, clearly, both findings are fully supported by the evidence.

## B. Proportionality

■ The test we must apply in conducting the proportionality review is "whether other sentencing bodies in this jurisdiction generally impose the supreme penalty for comparable or similar crimes, considering both the crime and the defendant." *Jenkins v. Commonwealth*, 244 Va. 445, 461, 423 S.E.2d 360, 371 (1992), *cert. denied*, 507 U.S. ___, 113 S.Ct. 1862 (1993); *see also* Code § 17-110.1(C)(2). To guide us in applying this test, we have compiled and examined all capital murder cases reviewed by this Court, including those in which a life sentence was imposed. Code § 17-110.1(E). We have given particular attention to those cases involving rape or attempted rape where the death sentence was based on both the "vileness" and "future dangerousness" predicates.

We also have considered Wilson's prior criminal history. Wilson has been convicted of burglary and possession of marijuana with intent to distribute. Furthermore, in 1984, Wilson broke into a woman's home at night, while she was sleeping, and repeatedly stabbed her. As a result, Wilson was convicted of unlawful wounding and burglary and was sentenced to five and ten years imprisonment, respectively. Wilson was on parole for the 1984 offenses when he committed the crimes at issue here.

After considering sentences imposed in comparable criminal cases and Wilson's criminal history, we conclude that the death penalty is not excessive or disproportionate to penalties generally imposed by other sentencing bodies in the Commonwealth. *See, e.g., Breard v. Commonwealth*, 248 Va. 68, 445 S.E.2d 670, *cert. denied*, ___ U.S. ___, 115 S.Ct. 442 (1994); *Mickens v. Commonwealth*, 247 Va. 395, 442 S.E.2d 678, *cert. granted and judgment vacated*, 513 U.S. ___, 115 S.Ct. 307 (1994).

## VII.  Conclusion

We find no reversible error among the issues presented by Wilson's appeals. Having conducted the review mandated by Code § 17-110.1, we decline to commute the sentence of death. Accordingly, we will affirm the judgments of the trial court.

Record No. 940533—*Affirmed.*
Record No. 940674—*Affirmed.*