# CIRCUIT COURT OF THE CITY OF NORFOLK

Commonwealth of Virginia

v.

Archie Lee Bazemore

July 13, 1998

Case No. CR97004290

BY JUDGE LYDIA CALVERT TAYLOR

This case came before the court on June 17, 1998, on defendant's motion to suppress his statement to police as involuntary and impermissible, largely due to his parents' absence during questioning. This court finds that the defendant's statement was voluntary and not in violation of defendant's constitutional rights. Therefore, this court denies defendant's motion to suppress.

## Facts

The testimony established that defendant was just six weeks short of eighteen and had had a limited earlier contact with police after he was detained for a curfew violation. Although defendant's mother, Annette Hurdle, testified he had a learning disability that interfered with such things as reading and eye and hand coordination, there was no evidence that defendant had a low IQ or any kind of emotional disturbance. As gauged by his taped conversation with police and his initial oral statement, the latter testified to by Norfolk Police Investigator Glenn Ford, defendant was of average intelligence and able to fend for himself.

Defendant's mother testified that defendant, with his parents, arrived voluntarily at the Norfolk Police Department on July 23, 1997, to respond to questioning regarding a robbery. According to Investigator Ford, defendant arrived prepared to discuss the murder at issue here. This court finds that the defendant's purpose in reporting to the police station is not pertinent to the voluntariness issue here but, if the issue were pertinent, would point out that all witnesses agreed that defendant was notified after his arrival at the station that the crime to be discussed was a murder. Where there was any conflict on the issue, this court found Investigator Ford's testimony to be the more believable of the two versions.

Defendant was given a Legal Rights Advice Form, PD-381, and, according to Detective Ford, defendant signed the form in the presence of his parents (his mother signed as a witness) and wrote "yes" beside each item on the form, indicating he understood each item, was waiving his rights, and wished to make a statement. Detective Ford further testified that his normal practice with this form was to have the defendant read the first item aloud, then to read each following item to the defendant, each time ascertaining that the defendant understood the item; Ford stated that he followed his normal practice to the best of his recollection in the instant case, as it is his custom to do so. Defendant's mother, in contrast, testified that she herself wrote the "yes" notations on the rights form. However, later in the hearing, after receiving immunity from prosecution for perjury, she said she was not sure if she or defendant had done so. Her first testimony, however, which she later disavowed, was unequivocal, after examining the handwriting.[1] Defendant's

---

[1] This court notes that the "yes," which defendant's mother at first stated without hesitancy had been written by her, was in the same handwriting as the word "yes" elsewhere in the statement, where no one disputed the word "yes" was in defendant's handwriting.

father, Archie Bazemore, Sr., testified that he and defendant's mother were present when defendant was given the rights form. He testified after defendant's mother had told this court that she wrote the "yes" notations and that defendant was never read his rights while she was present. This court finds that the combined testimony of Detective Ford and defendant's father plus the transcript of the taped statement, initialed by the defendant, and the match between the "yes" defendant later wrote and each "yes" written by each of the *Miranda* rights were far more persuasive than the wavering testimony of defendant's mother. This court, therefore, concludes that defendant's mother was not truthful with the court and that, in fact, both parents were present when defendant's rights were explained to him and the rights form was filled in by defendant (including each "yes"), with his mother and Detective Ford thereafter signing as witnesses.

After the rights form was signed, Detective Ford testified, he suggested to the defendant's parents that they wait in the lobby while defendant was questioned, to which they agreed, without stating any conditions or caveats. Ford noted that his policy was that children are frequently more open without their parents being present, a theory on which he operated in the instant case. Defendant's mother, in contrast, testified that she and defendant's father were escorted from the interview room without their prior consent or any explanation and that she was promised no questioning would begin until she returned. She also testified that she told defendant she was going to get a lawyer and that she would be there when he was questioned. Defendant's mother further testified that she told defendant he should not respond to questions unless he wanted to do so. This was corroborated by defendant's father, who testified that he told defendant and the police officers present at the time that defendant should not answer questions without a lawyer present.

This court finds that the testimony of defendant's mother and father is not believable on this issue and that Detective Ford's testimony is more believable on this point. The court finds that neither parent was promised that no questioning would take place in their absence, but rather they voluntarily left defendant alone with Detective Ford at Ford's request for the purpose of answering Ford's questions. Not only was Detective Ford not impeached — whereas the father and mother contradicted each other on important points — but the parents' version makes no sense. For what possible purpose would Detective Ford need to be alone with defendant at that point if *not* to question him? As to the willingness of defendant to speak to the detectives, both parents, in their own testimony, claimed to have told defendant not to answer questions, albeit for different reasons, before the defendant answered the questions he subsequently chose to answer. Even if this court believed the

police lied to defendant's parents, they did not lie to defendant. If the parents were believable, then defendant was warned not to speak to the police, yet chose nevertheless to talk to the police. This court finds that defendant was sufficiently warned by the rights form (and by his parents, if they were to be believed) of the dangers of answering questions without a lawyer being present and freely chose to do so.

Defendant exercised his constitutional right not to testify at the hearing, from which this court obviously draws no inferences. Because of that fact, however, the court only has the police version of what took place after defendant's parents left, during the questioning. Detective Ford's credibility was not impeached; in contrast, the parents differed among themselves on important points.

After defendant's parents voluntarily left the interview room at Detective Ford's request, they went into the lobby of the Police Operations Center. Defendant's mother testified that she never left the lobby,[2] and that she repeatedly asked if she would be readmitted to the interview room to be with her son. She stated that she telephoned the office of an attorney, James O. Broccoletti, at least twice while waiting for readmission to determine what she should do. When defendant's mother asked to be readmitted to the interview room, she allegedly spoke to at least two different persons at the front control window.[3] Defendant's mother stated on the stand that she asked if she could be readmitted and said that a lawyer was on the way. She never, however, asked that the interview be stopped, nor did she ask that defendant be released to her custody. From her own descriptions of what she said to the employees at the window, this court finds that defendant's mother did not make an unequivocal invocation of either her son's right to a lawyer or his right to her presence in the interview, even if such an invocation, unequivocally made, could be made by a parent on a minor's behalf.

Even if defendant's mother had made an unequivocal invocation of her son's rights, this court has been presented with no evidence that the statement could have or did reach the detectives involved in the interview process. Investigator Ford and Investigator Brian Wray, who was present for most, if not all, of the interrogation, each testified that they did not get any such message until the statement had been taped and was being transcribed. That

---

[2] This statement was directly contradicted by defendant's father, who testified that both parents left the lobby at least once.

[3] Defendant's mother stated she spoke to uniformed police officers, but Detective Ford's testimony contradicts this statement, in that he stated only civilians were normally at that window.

version is consistent with their testimony as to the policy within the Norfolk Police Department, that interviews are not interrupted, except under extraordinary circumstances. As explained above, defendant's parents were waiting in the lobby, which required that any contact made be accomplished by means of the intermediaries at the front window. Defendant's mother testified that she told the officers with whom she spoke to notify the detectives of her messages, but Investigator Ford testified that the message would have been transmitted at most only to someone in the detective squad room, as he was occupied in an interview. Due to the policy against interruptions of interviews, he would not have received any messages relayed to that squad room. As he was not wearing his beeper, Ford could not have been reached in that manner. The attorney contacted by defendant's mother during the interview did not arrive until the taped statement had already been taken and was being typed, according to Ford's testimony. Ford was not contradicted on this point, and his version matched the timing of the ending of the taped statement. For these reasons, this court finds that, even if defendant's mother had made an unequivocal invocation of rights, the detectives would not have received this information in time to stop the interview in the instant case.

*Argument*

A. *Waiver of Miranda Rights*

The Fifth Amendment requires that a suspect be informed of his rights before any custodial interrogation is conducted. *See Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966). If a suspect chooses to waive his rights, that waiver must be knowingly, intelligently, and voluntarily given. *See Miranda*, 384 U.S. at 444. Even if a suspect waives his *Miranda* rights, due process requires that a confession still must be voluntarily given for it to be admissible. *See Miller v. Fenton*, 474 U.S. 104, 110 (1985). In determining whether a confession is voluntary, a court must look at the totality of the circumstances. *See Frazier v. Cupp*, 394 U.S. 731, 739 (1969). In its examination, a court should consider all of the factors surrounding the interrogation, including "both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973).

Youth is one important factor that a court may consider when deciding the voluntariness of a particular statement. *Id.* Here, the defendant was just short of becoming an adult by six weeks. However, youth is not the only criterion; the totality of the circumstances test for voluntariness is the same whether the suspect be a juvenile or an adult. *See Fare v. Michael C.*, 442 U.S. 707, 724-

25 (1979). The Supreme Court of Virginia applies the totality of the circumstances test for adults and juveniles alike. *Green v. Commonwealth*, 223 Va. 706, 710 (1982). *In re Gault*, 387 U.S. 1 (1967), the seminal United States Supreme Court case upholding juvenile criminal defendants' rights, emphasized that admitting confessions of juveniles requires special caution. *Gault*, 387 U.S. at 55-56 (citing *Haley v. Ohio*, 332 U.S. 596 (1948)). The Court cautioned that "the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that is was not the product of ignorance of rights or of adolescent fantasy, fright or despair." *Id.* at 55. Consequently, when examining the confession of a juvenile, a court should evaluate "the juvenile's age, experience, education, background, and intelligence, and ... whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." *Fare*, 442 U.S. at 725 (citation omitted); *see also Williams v. Peyton*, 404 F.2d 528 (4th Cir. 1968) (holding that while youth itself is not ground for holding a juvenile's confession inadmissible, youth does require special scrutiny to determine whether a juvenile's confession is voluntary). This court finds that the taped statement itself and Detective Ford's testimony as to defendant's oral conversation with the police indicate that defendant's age (almost an adult), experience, education, and background, and apparently average intelligence all show he had the capacity to, and in fact did, understand the rights he chose to waive. Nothing in the evidence suggests the statement was the result of "adolescent fantasy, fright or despair." *Gault*, 387 U.S. at 55.

Defendant gave an initial oral statement, and then gave a substantially similar taped statement, the transcript of which was submitted to this court for the limited purpose of considering it for voluntariness. The transcript begins with a reaffirmation of the rights form by defendant, and, on the tape, as transcribed, the defendant specifically states that he is aware of his rights and chooses to waive them. This court considers this transcript, which it read for the limited purpose only of determining voluntariness, as strong evidence of defendant's ability to understand his rights and thoughtfully waive them.

The presence or absence of an adult — whether that adult be a parent, guardian, relative, or an attorney — is also a factor to consider when evaluating the confession's voluntariness. *See In re Gault*, 387 U.S. 1, 55 (1967) (requiring special care when counsel or parent not present); *Gallegos v. Colorado*, 370 U.S. 49 (1962) (invalidating conviction based on a confession of a fourteen-year-old defendant held for five days without seeing a "lawyer, parent, or other friendly adult"); *Haley v. Ohio*, 322 U.S. 596 (1948) (invalidating conviction based on confession of fifteen-year-old

defendant interrogated without being informed of his legal rights and without seeing his mother for six days). However, the absence of a parent or lawyer does not necessarily invalidate a confession. In *Gallegos*, the Court ruled a juvenile's confession inadmissible, citing several factors including "[t]he youth of the petitioner, the long detention, the failure to send for his parents, the failure immediately to bring him before [a] judge ... [and] the failure to see to it that he had the advice of lawyer or a friend," all of which informed the Court's decision. *Gallegos*, 370 U.S. at 55. Here, it is noteworthy that defendant's parents were with him when he came in, witnessed and heard his rights read to him, and heard and saw defendant waive his rights, orally and in writing, a waiver signed by his mother as a witness. This is not a case of a younger child picked up alone and denied any access to his parents while reaching the all-important initial decision of whether or not to waive his rights.

The Sixth Amendment right to counsel does not attach until the formal institution of criminal charges. *Moran v. Burbine*, 475 U.S. 412, 428 (1986). Although a juvenile, like an adult, must be informed of his or her right to have counsel present during any questioning, this right can be waived if done knowingly, intelligently, and voluntarily. *See Gault*, 387 U.S. at 55; *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Thus, the presence of a lawyer or a parent is relevant only to whether the suspect made an intelligent waiver of his rights, including the right to have a lawyer present during any questioning. *See In re Gault*, 387 U.S. 1, 55 (1967). Several federal courts have held that a juvenile's parents need not be present for the juvenile's confession to be admissible, but parental absence is a circumstance that weighs against the admissibility of the confession. *See Rone v. Wyrick*, 764 F.2d 532, 535 (8th Cir. 1985); *United States v. White Bear*, 668 F.2d 409, 412 (8th Cir. 1982); *cf. Miller v. Maryland*, 577 F.2d 1158, 1159 (4th Cir. 1978). Here, defendant's parents were present during, and apparently acquiesced in, the waiver of rights by this defendant. They were simply requested and agreed to leave during the actual questioning on what had occurred, as the police feared the defendant would deny involvement in front of his parents, to avoid their knowing of his wrongdoing.

The United States Supreme Court has been quite specific that the right to counsel is one which must be invoked by the individual defendant, not by a family member on his or her behalf,[4] and it must be invoked by the defendant

---

[4] See Moran, 475 U.S. at 422-27 (holding that defendant need not be informed that an attorney is waiting to see him and that defendant's sister could not force police to allow attorney to see defendant).

himself in a very particular manner.[5] A review by this court of cases from the United States and Virginia Supreme Courts has turned up no case stating that this rule is different for a juvenile; no case could be located that held that a parent or guardian could invoke for a juvenile what would ordinarily be the defendant's own right to counsel. This court draws the legal conclusion that, even if defendant's mother made an unequivocal request for counsel, she is powerless to invoke the defendant's right to counsel. Only the defendant may invoke his right to counsel during interrogation, and the defendant in this case had already made a knowing and voluntary waiver of that right in his mother's presence before she, not the defendant, allegedly changed her mind.[6] However, as stated earlier, this court has made the factual finding that this defendant's mother in fact never made a clear and unequivocal request for counsel.

## B. *Voluntariness of Statement*

Having found that the defendant understood his rights, which had been explained to him, and knowingly and intelligently waived them, and chose to make a statement without invoking his right to counsel, this court must still determine whether, overall, the defendant's statement was voluntary. A heavy burden rests upon the Commonwealth to demonstrate, by a preponderance of the evidence, that the accused's statement in fact was voluntary. *See Williams v. Commonwealth*, 234 Va. 168, 172 (1987). The Commonwealth first must demonstrate that the accused knowingly, voluntarily, and intelligently waived his *Miranda* rights. *See Swann v. Commonwealth*, 247 Va. 222, 231 (1994). *See also Grogg v. Commonwealth*, 6 Va. App. 598, 611 (1988) (citing *Edwards v. Arizona*, 451 U.S. 477, 482 (1981)). Even after that waiver is proven, the Commonwealth must show that the statement was given voluntarily and free of coercion and duress. "That burden is carried when the Commonwealth presents credible evidence to show that the confession was made under circumstances free of coercion and duress and untainted by promises of reward or leniency." *McCoy v. Commonwealth*, 206 Va. 470, 474 (1965) (citations omitted). When looking at the issue of coercion, a court should examine "whether the statement is the 'product of an essentially free and unconstrained choice by its maker,' or ... whether the maker's will 'has been overborne and his capacity for self-determination critically impaired'."

---

[5]   Davis v. United States, 512 U.S. 452 (1994) (holding that an ambiguous or equivocal statement requesting an attorney is insufficient to require officers to stop questioning a defendant).

[6]   See analysis below.

*Stockton v. Commonwealth,* 227 Va. 124, 140 (1984) (quoting *Schneckloth v. Bustamonte,* 412 U.S. 218, 225 (1973)). This requires evaluating "the defendant's background and experience," as well as "the conduct of the police." *Gray v. Commonwealth,* 233 Va. 313, 324 (1987). Admitting a confession requires a judge to make both factual and legal findings. The question whether the defendant intelligently waived a known right is a question of fact for the trial judge to determine prior to the introduction of the confession into evidence. *See Tipton v. Commonwealth,* 224 Va. 256, 261-62 (1982); *Morris v. Commonwealth,* 17 Va. App. 575, 579 (1994).

As stated above, the totality of the circumstances test is the same for both adults and juveniles. *Green v. Commonwealth,* 223 Va. 706, 710 (1982). The court must add to the equation with a juvenile both the youth's age and whether a parent or attorney was present as additional factors to consider, along with the juvenile's experience, education, background, intelligence, capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights. *Id.* Here, the defendant was just shy of being an adult (six weeks short of his eighteenth birthday), was a physically large, mature-seeming young man, had previously had contact with the police regarding truancy matters, had completed ninth grade, was not mentally retarded (although learning disabled, his rights were read to him, so any reading problems were not a factor in his understanding), and the transcript of the taped statement, as well as the description of the oral, untaped interviews by the police, all are factors favoring the Commonwealth's argument for the waiver being intelligently given and the statement voluntarily given and uncoerced.

Youth, by itself, is not a sufficient ground for refusing to admit a confession. *Johnson v. Commonwealth,* 184 Va. 466, 473 (1945). So, too, the absence of a parent does not alone render a confession inadmissible *per se.* The Virginia Court of Appeals has held that:

> it is desirable to have a parent, counsel or some other interested adult or guardian present when the police interrogate a juvenile, and it is *even more desirable* to have an interested adult present when a juvenile waives fundamental constitutional rights and confesses to a serious crime. However, it is well established that the mere absence of a parent or counsel does not render a waiver invalid.

*Grogg v. Commonwealth,* 6 Va. App. 598, 613 (1988) (emphasis added); *accord Novak v. Commonwealth,* 20 Va. App. 373, 384-88 (1995) (holding admissible the confession of sixteen-year-old after he waived his *Miranda*

rights without parents present). In this case, defendant's mother was present at that most important time, when the defendant was advised of his Miranda rights and waived them, the point at which it is "even more desirable" that a parent or interested adult be present. *Grogg*, 6 Va. App. at 613. Although she was not present when the defendant's statement was recorded and signed, and there is conflicting testimony concerning the reasons for her absence, defendant's mother was not required to be present during the statement. She was in fact present for the defendant's most crucial decision, whether or not to waive his rights and talk to the police at all.

The absence of any evidence of deception or artifice during the questioning of this defendant also weighs in favor of the Commonwealth. Those additional factors that a court should consider when evaluating the voluntariness of a confession, such as the length of questioning or the deprivation of food or sleep, also weigh in the Commonwealth's favor here. *Harrison v. Commonwealth*, 3 Va. App. 260, 264-65 (1986). The courts of other states, as well as the federal circuit courts, have looked at other factors bearing upon voluntariness, such as the length of time that a juvenile is held in custody and whether a parent or attorney who attempted to see a juvenile was denied access. *See, e.g., Williams v. Peyton*, 404 F.2d 528 (4th Cir. 1968) (holding length of detention, failure to send for parents, and failure to bring promptly before a magistrate are all relevant factors); *Everetts v. United States*, 627 A.2d 981 (D.C. Ct. App. 1993) (holding confession of youth obtained after being handcuffed to a desk for eight hours and delaying presentment for eleven hours was voluntary where videotape of confession showed no psychological coercion); *People v. Knox*, 542 N.E.2d 910 (Ill. Ct. App. 1989) (applying a causation test of whether the absence of an adult interested in the defendant's welfare contributed to the coercive circumstances surrounding the interview, not whether contact was denied); *Shelton v. State*, 699 S.W.2d 728 (Ark. 1985) (holding confession of seventeen-year-old charged with capital murder inadmissible where evidence showed defendant was of marginal intelligence and maturity, confession was taken at 2:30 a.m., the juvenile had never been arrested before, and had been unlawfully interrogated in a police car prior to being advised of his *Miranda* rights and before giving a taped confession). With regard to the length of time a suspect is held, there does not appear to be any magic number. In one case, a juvenile defendant was left in the back of a police cruiser for four hours, but the court still admitted his confession into evidence. *See Derrick v. Peterson*, 924 F.2d 813 (9th Cir. 1990). Holding a juvenile for more than a day, however, has been found to offend the Constitution. *See Gallegos v. Colorado*, 370 U.S. 49, 50 (1962); *Williams v. Peyton*, 404 F.2d 528 (4th Cir. 1968) (holding confession invalid

where, among other offensive factors, defendant was held incommunicado for three days).

Archie Lee Bazemore was questioned for an unspecified number of hours, but far less than a day, with police offering him food, drink, a cigarette, and the use of the restrooms. The length of time he was held and questioned was sufficiently short that defendant has not even raised the issue of how much time he was held as an argument in favor of this motion to suppress. As to the issue of access to his parents, the more important dividing line separating admissible from inadmissable confessions among these case appears to be the juvenile's request, not his parents, although denial of a parent's request can, in combination with other factors, make the confession involuntary. If a juvenile unequivocally requests to see a parent and such request is denied, the statement is probably inadmissible. If a parent or attorney, on the other hand, makes an unequivocal request and is affirmatively denied access to a juvenile before or during question, the confession might be inadmissible. Here, there is no evidence that defendant himself ever asked to see his mother or any attorney; to the contrary, Detective Ford stated that the defendant never made such a request. The defendant's parents were not *denied* access at the important point at which defendant was read his rights but in fact were present; they voluntarily agreed to leave, upon police request, only *after* he had waived his rights and stated he wished to talk to the police. There is no credible evidence that his mother was *denied* access later, as opposed to being told she would need to wait when she expressed her desire to have Detective Ford informed by personnel in the lobby that she wished to see Ford.

The defendant's final argument in support of his claim of the involuntariness of his confession is his repudiation of that confession upon first seeing his mother after confessing. This court finds no evidence that defendant's repudiation of his confession, even if this court gave his mother's testimony credence, was indicative that the confession was not voluntary. Instead, this court finds such a repudiation to be a natural result of a defendant's shame or remorse, adult or juvenile, upon seeing his mother for the first time after confessing to murder. It is often easier for a child to admit wrongdoing to a stranger, than to a parent, whose love, trust, and belief in the child's goodness is difficult for a child to betray and face. The defendant's reaction was a logical one, indicating in fact the type of remorse that is usually indicative of the reliability of a confession, not its lack of trustworthiness.

*Conclusion*

After careful consideration of the evidence, the briefs submitted by both sides, and the excellent summary of the arguments at the last hearing by both the defense and the Commonwealth, this court finds for the reasons stated above that the defendant's statement to police was given freely, voluntarily, and knowingly after proper advice on and waiver of his *Miranda* rights. This court therefore denies defendant's motion to suppress.