COURT OF APPEALS OF VIRGINIA


Present: Judges Clements, Haley and Senior Judge Bumgardner
Argued at Alexandria, Virginia


RONALD D. WOLFE

MEMORANDUM OPINION[*] BY
v.      Record No. 1273-07-4               JUDGE JEAN HARRISON CLEMENTS
MARCH 18, 2008
STEPHANIE A. ARTHUR


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Stanley P. Klein, Judge

David M. Zangrilli, Jr. (J. Patrick McConnell; Odin, Feldman &
Pittleman, P.C., on brief), for appellant.

David D. Masterman (Masterman & Graham, P.C., on brief), for
appellee.


Ronald D. Wolfe (husband) appeals from an order of the Circuit Court of Fairfax County

(trial court) requiring him to pay Stephanie A. Arthur (wife) $34,621.17 in child support

arrearages, $5,944.57 in interest on those arrearages, and $3,000 in attorney's fees. On appeal,

husband contends the trial court erred in (1) miscalculating the amount of the child support

arrearage he owed, (2) applying the wrong judgment rate of interest to the part of the arrearage

that accrued before July 1, 2004, and (3) awarding wife attorney's fees. Both parties request an

award of attorney's fees and costs in connection with this appeal. For the reasons that follow, we

affirm the trial court's judgment in part, reverse the court's judgment in part, and remand for

further proceedings.

As the parties are fully conversant with the record in this case, and because this

memorandum opinion carries no precedential value, this opinion recites only those facts and

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

## I. BACKGROUND

The parties were married in 1988. One child was born of the marriage on August 27, 1988. After separating in 1993, the parties entered into a marital settlement agreement (MSA) on June 17, 1994. The MSA provided that child support would be paid as follows:

> The Husband promises to pay to the Wife, for the support and maintenance of the minor child, a monthly sum of money equal to his U.S. Army Basic Allowance for Quarters, at the "with dependent" rate (i.e., BAQ), regardless of whether he is paid BAQ by the Army. (BAQ is a monthly allowance normally paid to soldiers in an amount according to their rank, and is adjusted upward annually.) At the present time, the Husband's rank authorizes monthly BAQ in the amount of $415.50. The monthly child support specified herein has been paid by the Husband to the Wife since December 1993, and shall continue to be paid (by the 5th day of the month) until the minor child shall attain the age of 18 years or shall become emancipated, whichever shall occur soonest.
> . . . Should the Husband depart active duty in the U.S. Army prior to termination of his child support obligation, he promises to continue making child support payments in an amount equal to the support guidelines utilized in the state the parties shall have obtained their divorce.

Husband left the military in September 1994 and began paying wife $300 per month in child support in October 1994. The parties were divorced by final divorce decree entered by the trial court on August 15, 1995.

The MSA was affirmed, ratified, and incorporated by reference into the divorce decree. The decree did not specify a monthly amount of support, but instead reiterated the terms of the MSA, specifically stating that, "[s]hould the Husband depart active duty in the U.S. Army prior to termination of his child support obligation, he promises to continue making child support payments in an amount equal to the support guidelines utilized in the state the parties shall have obtained their divorce." The decree further stated that no arrearage existed and that child support was to continue

until the minor child "reache[d] the age of nineteen or graduate[d] from high school, whichever first occur[red]," provided the child was "(i) a full-time high school student, (ii) not self-supporting and (iii) living in the home of the Wife."

Following entry of the divorce decree, husband continued to pay wife $300 per month in child support until January 2003, at which time he unilaterally started paying $350 per month. In January 2004, he unilaterally increased his support payments to $500 per month. In July 2004, he ceased paying child support altogether. At no point did either party petition the court for modification of husband's court-ordered support obligation.

In February 2005, wife petitioned the trial court for a rule to show cause, alleging husband had not complied with the child support provisions of the MSA. After issuing a rule to show cause and hearing evidence and argument on the rule, the court entered an order on May 6, 2005, declining to find husband in contempt of court. Nevertheless, the court concluded that husband had failed to pay child support consistent with the Virginia child support guidelines following his departure from the military in 1994, as required by the MSA. The court further concluded that, given the divorce decree's recitation that there was no child support arrearage, any arrearage owed by husband necessarily commenced after the decree was entered. Directing counsel to calculate husband's arrearage on their own, if possible, the court instructed counsel to exchange the parties' income documentation and compute the amount of post-decree child support husband should have paid under the guidelines "based upon the respective incomes of the parties at the relevant periods of time."

Unable to agree on how husband's arrearage should be calculated, counsel again appeared before the trial court on January 12, 2006. After hearing argument by counsel, the court adopted wife's view that, because there had been a change in the parties' incomes every year from 1995 to 2005, husband's post-decree child support obligation should be recomputed anew each year under

the guidelines in effect at the time. Thus, the court ruled that the amount of child support owed by husband was to be recalculated annually by applying the guidelines as of the first day of each year to the parties' respective incomes from their tax returns for the previous year. Applying that method, the court found that, for the period September 1, 1995, to January 12, 2006, husband had an arrearage of $34,621.17.

The trial court further agreed with wife that interest on the unpaid balance of the arrearage accrued at the judgment rate "from the date each payment of support was due until paid in full" and that the applicable judgment rate was 9% through June 30, 2004, and 6% thereafter. Accordingly, the court found that husband owed $5,944.57 in interest. The court further awarded wife $3,000 in attorney's fees and increased husband's child support obligation to $701 per month effective February 1, 2006.

The trial court entered an order memorializing its rulings on January 30, 2006. The court subsequently denied husband's motion to reconsider, and this appeal followed.

## II. CHILD SUPPORT ARREARAGE

On appeal, husband challenges the trial court's calculation of the arrearage. He first contends that, in deciding husband's past due child support obligation was to be recalculated under the guidelines annually, the court misconstrued the terms of the MSA and retroactively modified husband's child support obligation. We agree.

> [I]f all the evidence which is necessary to construe a contract was presented to the trial court and is before the reviewing court [on appeal], the meaning and effect of the contract is a question of law which can readily be ascertained by this court. Property settlement and support agreements are subject to the same rules of construction and interpretation applicable to contracts generally.

Fry v. Schwarting, 4 Va. App. 173, 180, 355 S.E.2d 342, 346 (1987) (citation omitted). Thus, a court may "not insert by construction, for the benefit of a party, an exception or condition which the parties omitted from their contract by design or neglect. Moreover, a court must construe the

- 4 -

words as written and not make a new contract for the parties." Bridgestone/Firestone v. Prince William Square Assocs., 250 Va. 402, 407, 463 S.E.2d 661, 664 (1995). Accordingly, "[w]here the agreement is plain and unambiguous in its terms, the rights of the parties are to be determined from the terms of the agreement and the court may not impose an obligation not found in the agreement itself." Jones v. Jones, 19 Va. App. 265, 268-69, 450 S.E.2d 762, 764 (1994). In other words, courts may "not rewrite contracts to insert provisions that have been omitted by the parties." Jones v. Harrison, 250 Va. 64, 68, 458 S.E.2d 766, 769 (1995). "The guiding light . . . is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares." W. F. Magann Corp. v. Virginia-Carolina Electrical Works, 203 Va. 259, 264, 123 S.E.2d 377, 381 (1962).

Moreover, it is well established that "a court may modify only future support payments." Riggins v. O'Brien, 263 Va. 444, 447, 559 S.E.2d 673, 675 (2002). Hence, court-ordered child support may not be modified retroactively. Id. (citing Code § 20-108); Shoup v. Shoup, 37 Va. App. 240, 249, 556 S.E.2d 783, 788 (2001) (citing Code § 20-108); see also Commonwealth v. Skeens, 18 Va. App. 154, 158, 442 S.E.2d 432, 434-35 (1994) ("Child support payments required under a valid court order become vested as they accrue, and the court is without authority to make any change as to past due installments.").

Because no support arrearage existed when the divorce decree was entered and because husband had already left the military when the MSA was incorporated into the decree, our initial focus is on the provision in the MSA stating that, "[s]hould . . . [h]usband depart active duty in the U.S. Army prior to termination of his child support obligation, he promises to continue making child support payments in an amount equal to the support guidelines utilized in the state the parties shall have obtained their divorce." As relevant to the issue before us, this provision is plain and unambiguous, and clearly manifests the parties' intention that, upon husband's

departure from the military, his child support obligation was to continue and was to be based on the Virginia statutory child support guidelines, rather than on his former BAQ.

Accordingly, we agree with the trial court that, following his departure from the military in 1994, husband was required to pay child support consistent with the Virginia child support guidelines. Consequently, upon leaving the military, husband was obligated, under the terms of the MSA, to start paying child support in an amount computed in accordance with the guidelines in effect at the time. That support amount then became an order of the court when the MSA was incorporated into the divorce decree. See Shoup, 37 Va. App. at 250, 556 S.E.2d at 788 ("Where the court adopts the parties' agreement by incorporating it into its decree, it is enforceable, to the word, as any other term of the decree."); Code § 20-109.1.

Against this backdrop, we turn to the trial court's decision that husband's post-decree child support obligation was to be recalculated annually under the guidelines. Upon our *de novo* review of the MSA, we conclude that the court's decision is in derogation of the terms of the parties' agreement and thus contrary to the established law prohibiting the retroactive modification of support.

As previously mentioned, the MSA expressly provides that husband's child support obligation was to be automatically modified when he left the military: rather than paying an amount equal to his BAQ, he was to start paying an amount calculated under the statutory guidelines. The MSA, however, makes no other provision, either expressly or implicitly, for modification of support under the guidelines. The agreement neither mentions the guidelines again nor references any periodic modification of support. Likewise, it does not require the parties to exchange income information or otherwise contain any mechanism for the periodic review of the parties' incomes. In short, after providing for the initial adjustment of child support under the guidelines upon husband's

departure from the military, the MSA is silent as to any further income-based adjustments to child support.

Had the parties intended to provide for the automatic annual modification of husband's child support obligation, they could have included a provision to that effect in the MSA. See Shoup, 37 Va. App. at 250, 556 S.E.2d at 788 (finding valid and enforceable the language in an incorporated agreement requiring the parties, upon the occurrence of any of several enumerated changes in circumstances, to "follow the child support guidelines . . . for determination of child support"); Code § 20-109.1 ("Provisions in [incorporated] agreements for the modification of child support shall be valid and enforceable. Unless otherwise provided for in such agreement or decree incorporating such agreement, such future modifications shall not require a subsequent court decree."). However, they did not do so. Indeed, other than the adjustment upon husband's exit from the military, the only modification to child support the MSA provides for is the termination of child support upon certain conditions.

It is clear, therefore, that, while the MSA reflects the parties' intention that husband's child support obligation was to be recalculated upon his leaving the military, the MSA contains nothing to suggest the parties intended that husband's obligation was ever to be automatically modified again under the guidelines, much less on an annual basis. Accordingly, the imposition of such a requirement constitutes a rewriting of the parties' agreement to include a provision that the parties themselves did not include in the agreement. Indeed, to find such a provision in the agreement, we "would have to insert words into the writing contrary to the elementary rule that the function of the court is to construe the contract made by the parties, not to make a contract for them." Cave Hill Corporation v. Hiers, 264 Va. 640, 646, 570 S.E.2d 790, 793 (2002).

In the absence of such a provision in the MSA for automatic modification, wife's remedy was to file a motion to modify support based upon a material change of circumstance. See

generally Goodpasture v. Goodpasture, 7 Va. App. 55, 58, 371 S.E.2d 845, 847 (1988) ("Should circumstances change requiring alteration in the amount of [court-ordered] support, a party's remedy is to apply to the court for relief."). Because neither party petitioned the court for modification of husband's court-ordered support obligation, the support amount that was to be computed under the guidelines when husband left the military remained unchanged until the trial court increased husband's child support obligation effective February 1, 2006. Thus, the court 's award of arrearages to wife, which was based on annual modifications of husband's post-decree child support obligation, constitutes an impermissible retroactive modification of a support order.

We hold, therefore, that the trial court erred in awarding wife $34,621.17 in arrearages. Accordingly, we reverse the trial court's decision and remand for recalculation of the appropriate child support arrearage, if any.

Husband also challenges the trial court's award of arrearages on the ground that, pursuant to the express terms of the divorce decree requiring child support only as long as the parties' minor child was "living in the home of the Wife," he owed no child support after June 2004 because the minor child was no longer living in wife's home. Specifically, he contends the trial court erred "by failing to rule that [husband] did not have a child support obligation to [wife] during times when the child was not living in [wife's] home, and by failing to allow [husband] an evidentiary hearing on this issue." We find no merit in these contentions.

"[D]ecisions concerning . . . child support rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence." Floyd v. Floyd, 17 Va. App. 222, 224, 436 S.E.2d 457, 458 (1993). We view the evidence in the light most favorable to wife, who prevailed below. Anderson v. Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999). Moreover, "[a]bsent clear evidence to the contrary in the record, the judgment of a trial court comes to us on appeal with a presumption that the law was correctly

applied to the facts." Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977); see also Johnson v. Commonwealth, 12 Va. App. 391, 396, 404 S.E.2d 384, 387 (1991) ("On appeal, the judgment of the trial court is presumed correct."). The party alleging reversible error has the burden "to show by the record" that the alleged error occurred. Johnson, 12 Va. App. at 396, 404 S.E.2d at 387. Indeed, our review of an appeal is restricted to the record. Turner v. Commonwealth, 2 Va. App. 96, 99, 342 S.E.2d 400, 401 (1986). "An appellate court must dispose of the case upon the record and cannot base its decision upon appellant's petition or brief, or statements of counsel in open court. We may act only upon facts contained in the record." Smith v. Commonwealth, 16 Va. App. 630, 635, 432 S.E.2d 2, 6 (1993).

Here, the record establishes that wife retained "primary physical custody" of the parties' minor child during the relevant period. While husband's counsel asserted in the trial court that the child did not live in wife's home after June 2004, no evidence was presented to support that assertion. Wife's counsel represented to the trial court that wife "was living both in Florida and Virginia at times" and that the child "stay[ed] predominantly with the stepfather at the time," but did not stipulate or otherwise concede that the child did not live in wife's home after June 2004. Husband put on no evidence showing that the child's stay with the stepfather was not in wife's home. Indeed, husband neither presented nor proffered any evidence about where or with whom the child was living. Nor did husband ever manifestly seek to present or proffer any such evidence.

Because the record fails to support a finding that the child was ever not living in wife's home, we cannot say the trial court abused its discretion in "failing to rule that [husband] did not have a child support obligation to [wife] during times when the child was not living in [wife's] home." Likewise, because the record fails to show that husband ever even attempted to present or proffer evidence regarding the child's residence, we cannot say the trial court abused its discretion in "failing to allow [husband] an evidentiary hearing on this issue." Thus, even if we

- 9 -

assume, without deciding, that, as husband asserts, the language in the divorce decree upon which husband relies may be read literally despite its apparent ambiguity,[1] we conclude the record fails to support husband's claims of error.

## III. JUDGMENT INTEREST

Husband contends the trial court erred in awarding wife $5,944.57 in interest on his past due child support obligation. Specifically, he argues the court improperly applied the judgment rate of interest "from the date each payment of support was due until paid in full" and incorrectly determined the applicable judgment rate was 9% through June 30, 2004, and 6% thereafter.

Because the amount of interest owed by husband is dependent on the ultimate determination of husband's child support arrearage, if any, and because we remand this case to the trial court for the recalculation of husband's child support arrearage, we reverse the court's interest award and remand for reconsideration.

We note, however, that Code § 20-78.2 provides that "[t]he entry of an order or decree of support for a spouse or for support and maintenance of a child under the provisions of this chapter . . . shall constitute a final judgment for any sum or sums in arrears." Code § 20-78.2 further provides, as pertinent here, that an order of support arrearage "shall also include an amount for interest on the arrearage at the judgment interest rate as established by [Code] § 6.1-330.54." See also Code § 8.01-382 ("If a judgment or decree be rendered which does not provide for interest, the judgment or decree . . . shall bear interest at the judgment rate of interest as provided for in [Code] § 6.1-330.54 from its date of entry . . . ."). Code § 6.1-330.54 provides that "[t]he rate of interest for a judgment shall be the judgment rate of interest in effect at the time of entry of the judgment and shall not be affected by any subsequent changes to the rate of interest stated in this section."

---

[1] The trial court found the language was inherently ambiguous. Given our resolution of the matter, we need not address that specific issue.

Effective July 1, 2004, the judgment rate of interest was lowered from 9% to 6%. Code § 20-60.3(12) provides that "the support obligation as it becomes due and unpaid creates a judgment by operation of law." Thus, "interest should be assessed on unpaid installments of [support] from the date they mature or become due until the date they are paid." Alig v. Alig, 220 Va. 80, 85, 255 S.E.2d 494, 498 (1979).

Accordingly, insofar as husband's underlying argument remains pertinent on remand, we conclude the trial court did not err in applying the judgment rate of interest "from the date each payment of support was due until paid in full" or in determining the applicable judgment rate was 9% through June 30, 2004, and 6% thereafter.

IV. ATTORNEY'S FEES

Husband contends the trial court abused its discretion in awarding wife $3,000 in attorney's fees.

Whether to award attorney's fees "'is a matter submitted to the sound discretion of the trial court and is reviewable on appeal only for an abuse of discretion.'" Northcutt v. Northcutt, 39 Va. App. 192, 199-200, 571 S.E.2d 912, 916 (2002) (quoting Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987)). "The key to a proper award of counsel fees is reasonableness under all the circumstances." Joynes v. Payne, 36 Va. App. 401, 429, 551 S.E.2d 10, 24 (2001).

Here, the MSA provides that, "[i]f it becomes necessary to enforce the provisions of this . . . Agreement, the prevailing party shall be entitled to reimbursement by the other of his or her enforcement costs, to include attorney fees." Because the question whether to award attorney's fees is dependent on the ultimate determination of husband's child support arrearage, if any, and because we remand this case to the trial court for the recalculation of husband's child support arrearage, we reverse the court's award of attorney's fees and remand for reconsideration. "We also remand for

- 11 -

consideration of an award of court costs and attorney's fees on appeal, consistent with its decision and the terms of the agreement." Shoup, 37 Va. App. at 255, 556 S.E.2d at 790.

## V.  CONCLUSION

For these reasons we affirm the trial court's judgment in part, reverse the court's judgment in part, and remand for further proceedings consistent with this opinion.

Affirmed in part,
reversed in part,
and remanded.
