## Norfolk

### CLARENCE EUGENE JOHNSON

v.

### COMMONWEALTH OF VIRGINIA

No. 1050-89-1

Decided April 30, 1991

COUNSEL

Eric W. Harris, for appellant.

H. Elizabeth Shaffer, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

BAKER, J.—Clarence Eugene Johnson (appellant) appeals from judgments of the Circuit Court of the City of Chesapeake (trial court) which approved jury verdicts convicting him of murder, robbery, and use of a firearm in the commission of those felonies. Appellant asserts that inculpatory statements he made to the police were involuntary and that the trial court erred when it overruled appellant's motion to suppress the statements. In addition, appellant avers that the trial judge committed reversible error when, pending the sentencing hearing, he read a pretrial inculpatory statement appellant gave to a juvenile and domestic relations district court intake officer.

## I. WHETHER THE INCULPATORY STATEMENTS TO THE POLICE WERE VOLUNTARILY MADE

Appellant, a fifteen-year-old male, was tried as an adult and convicted by a jury for the murder of Otis Jordan, Sr. (victim). Appellant, described by his former teacher as "the best student in my class," was capable of reading and writing at a seventh grade level and suffered from no disabilities. After a suppression hearing, the trial court specifically found that appellant's statement to

the police was freely and voluntarily made and that his will had not been overborne. The record supports that finding.

In the afternoon of the day on which the offenses were committed, appellant told Ulysses Felton, his cousin, that he had killed the victim using a .22 caliber weapon. A short while before, appellant had displayed the weapon to Felton and told him of his plan to rob the victim. In the company of his father, an ordained minister, and his older brother, appellant came to police headquarters where he was interviewed by two police officers. Prior to any questioning by the police, in the presence of his father, appellant was given *Miranda* warnings. Both appellant and his father signed the waiver portion of the *Miranda* form which had been read to him. Appellant showed no signs of sleepiness nor did he appear to be under the influence of alcohol or drugs. When appellant was questioned, his father was present and appellant again was shown the *Miranda* form which he had signed. He was asked if he understood the rights of which he had been previously informed. Appellant and his father acknowledged that they were aware of appellant's rights and advised the officers that they were willing to respond to questions concerning the murder.

Conflicting evidence was presented as to some of the events that followed; however, viewed most favorably to the Commonwealth, they disclose no threats, force or display of weapons. One officer was less than truthful when he led appellant to believe that he had obtained incriminating fingerprints.[1]

Initially, appellant denied that he was involved in the murder but later, after requesting to speak in the presence of Officer Slezak only, he confessed orally to that offense. Only Slezak and appellant were present when that confession was made. Later, in a handwritten statement, appellant corroborated his oral confession.

The Supreme Court of Virginia has provided standards of review which control issues relating to the voluntariness of inculpatory statements made to the police. Initially, the Commonwealth must prove, by a preponderance of the evidence, that appellant's statement was voluntary. *Williams v. Commonwealth*,

---

[1] While we do not condone conduct wherein false representations are made, the statement made by the officer did not constitute reversible error. *See State v. C.J.M.*, 409 N.W.2d 857 (Minn. Ct. App. 1987); *Commonwealth v. Forde*, 392 Mass. 453, 466 N.E.2d 510 (1984).

234 Va. 168, 172, 360 S.E.2d 361, 364 (1987), *cert. denied*, 484 U.S. 1020 (1988). "Whether a statement is voluntary is ultimately a legal rather than factual question, but subsidiary factual questions are entitled to a presumption of correctness." *Id.*; *see also Miller v. Fenton*, 474 U.S. 104, 110-12 (1985). Once the trial court has found that the statement was voluntary, on appeal that finding is entitled to the same weight as a fact found by a jury and will not be disturbed unless plainly wrong. *Rodgers v. Commonwealth*, 227 Va. 605, 608-09, 318 S.E.2d 298, 300 (1984). In our review of the record, we conclude that the totality of the evidence supports the judgment of the trial court that appellant's statements were made freely, knowingly and voluntarily, and that appellant's *Miranda* rights were not violated.

In *Green v. Commonwealth*, 223 Va. 706, 292 S.E.2d 605 (1982), the defendant was a fifteen-year-old who had been found guilty of six felonies and complained that his confession was not preceded by a voluntarily waiver of his rights. In affirming the trial court's denial of a motion to suppress the confession, the Court said:

> [T]he question of waiver must be determined on "the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." This determination, based on the totality of the circumstances, is the same when a juvenile is involved.

*Id.* at 710, 292 S.E.2d at 607-08; *see also Fare v. Michael C.*, 442 U.S. 707, 725 (1979); *Smith v. Commonwealth*, 7 Va. App. 310, 314, 373 S.E.2d 340, 342 (1988).

In the case before us, appellant does not deny that *Miranda* warnings were properly given and that he and his father signed the waiver form. The trial court made a factual finding that, after considering all the evidence, appellant was capable of comprehending the consequences of his statement, that his will was not overborne and that the confession was freely and voluntarily made. Credible evidence in the record supports that decision and we cannot say that the trial court's ruling was plainly wrong.

## II. THE PRETRIAL INCULPATORY STATEMENT TO THE INTAKE OFFICER

Appellant elected to be tried by a jury. Although he had been certified to be tried as an adult, the jury was limited by law to finding guilt or innocence. *See* Code § 16.1-272; *Ballard v. Commonwealth*, 228 Va. 213, 217, 321 S.E.2d 284, 286 (1984), *cert. denied*, 470 U.S. 1085 (1985).

Following the jury verdicts, the trial court referred the matter to a circuit court probation officer for a background investigation and report. During its review of the file in preparation for sentencing, the trial judge read an inculpatory statement made by appellant to a juvenile and domestic relations district court intake officer which revealed that appellant had planned the robbery several weeks before it occurred. That statement disclosed that appellant had not wanted harm to come to the victim. After reading the statement, the trial judge suggested to the Commonwealth's attorney that the intake officer testify at the sentencing hearing. The trial judge was advised that statements made to an intake officer are not admissible at any stage of the proceedings. *See* Code § 16.1-261. The statement was not formally admitted and the intake officer was not called to testify.

Upon learning that the trial judge had read the inadmissible statement, counsel for appellant moved the trial court to declare a mistrial, set aside the verdicts and order a new trial. In response, the trial judge told counsel, with appellant present, that he initially wanted the statement read in open court at the sentencing hearing to assure anyone who might be present and who might believe that appellant was innocent that appellant, in fact, was guilty. The trial judge added that he was not influenced by the statement and, without the inadmissible statement, he would have made the same guilt finding as did the jury.

The trial court overruled appellant's motion and sentenced appellant to terms of sixty years on the murder, two years on the murder firearm use, thirty years on the robbery, and four years on the robbery firearm use. Twenty years of the murder sentence and ten years of the robbery sentence were suspended. The murder and robbery sentences were less than the maximum sentences for

these crimes.[2]

For the purpose of this opinion we assume, without deciding, that the statement made to the intake officer would not have been admissible evidence at the sentencing hearing. The issue before us is whether the record requires that the jury verdicts be set aside and a new trial ordered because the sentencing judge read the intake officer's file, which contained an inculpatory statement not admissible at the sentencing hearing.

On appeal, the judgment of the trial court is presumed correct. *Crum v. Udy*, 206 Va. 880, 881, 146 S.E.2d 878, 879 (1966). The burden is on the party who alleges reversible error to show by the record that reversal is the remedy to which he is entitled. *See* 1B Michie's Jurisprudence *Appeal and Error* § 258 (1980). No error is assigned or alleged concerning the guilt phase of the trial. Moreover, the trial judge stated that, without the intake officer's statement, he would have found appellant guilty and that the statement would not affect his decision in imposing sentence.

In *Smith v. Commonwealth*, 239 Va. 243, 389 S.E.2d 871, *cert. denied*, 111 S. Ct. 221 (1990), a jury found Smith guilty of murder and recommended a death sentence. A presentence investigation and report was ordered. The trial court reviewed the punishment set by the jury and, after considering the entire record, determined that the jury's recommendation was appropriate. Prior to making a final judgment, the trial court read a victim impact statement which the jury had not seen. Citing *Booth v. Maryland*, 482 U.S. 496 (1987), Smith argued that the death sentence should have been commuted to life imprisonment because it was reversible error for the sentencing judge to read the impact statement. The *Smith* Court distinguished the *Booth* case by noting that the impact statement had been given to the *Booth* jury for consideration when it was determining the punishment it would recommend. The Court then noted that the *Smith* record disclosed that "the impact statement was not read to the jury nor was the jury ever made aware of its existence. It was considered, if at all, only by the trial court and then only after the jury had fixed Smith's sentence." *Smith*, 239 Va. at 268, 389 S.E.2d at 884.

---

[2] First degree murder and robbery each permit maximum sentences of life in the penitentiary.

Smith argues that this distinction is irrelevant. He says that Code § 19.2-264.5 places upon the trial court the responsibility of making the final determination of the appropriate sentence and that the court functions much like a jury and is subject to the same improper influence of a victim impact statement.

We disagree with Smith. We think the distinction between this case and *Booth* is both relevant and dispositive. "A judge, unlike a juror, is uniquely suited by training, experience and judicial discipline to disregard potentially prejudicial comments . . . during the mental process of adjudication. . . ." Hence, the "impermissible risk" present in *Booth* does not exist here.

*Id.* at 268, 389 S.E.2d at 884-85. For the same reason, and because the record does not show that the trial judge was in any way influenced by the statement to the intake officer, we find that his statements and the sentences imposed reveal that no reversible error was committed by his refusal to order a new trial.

Accordingly, for the reasons stated, the judgments of the trial court are affirmed.

*Affirmed.*

Moon, J., and Willis, J., concurred.