COURT OF APPEALS OF VIRGINIA


Present:   Judges Kelsey, Haley and Petty
Argued at Alexandria, Virginia


HOWARD A. GRAD

v.      Record No. 1375-06-4

JUDITH A. STONE, F/K/A
 JUDITH A. GRAD

MEMORANDUM OPINION[*] BY
JUDGE WILLIAM G. PETTY
JULY 17, 2007


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Randy I. Bellows, Judge

C. Dean Latsios (Peter M. Fitzner; Matthews, Snider, Norton &
Fitzner, on brief), for appellant.

David M. Levy (Surovell Markle Isaacs & Levy, on brief), for
appellee.


Howard A. Grad (husband), appellant, contends the trial court erred in its spousal support

award to appellee, Judith A. Stone (wife).  Specifically, husband argues that (1) the evidence of

wife's need for spousal support was insufficient to support an award of $3,500 per month; (2) the

trial court failed to follow the law of the case doctrine regarding the parties' lifestyle during their

marriage; and (3) the trial court erred by considering husband's post-divorce lifestyle when

fashioning the spousal support award.  We disagree with husband and affirm the trial court's

decision.

I. BACKGROUND

We view the evidence, and all reasonable inferences flowing from the evidence, in a light

most favorable to wife, the party prevailing below.  Congdon v. Congdon, 40 Va. App. 255, 258,

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

578 S.E.2d 833, 835 (2003). "That principle requires us to 'discard the evidence' of the appellant which conflicts, either directly or inferentially, with the evidence presented by the appellee at trial." Id. (quoting Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002)).

The evidence established that the parties were married for 25 years, and were divorced on April 21, 1998. On August 7, 1998, the trial court held a spousal support hearing. At the hearing, the trial judge stated as pertinent to this appeal:

> I have taken into account the standard of living that the parties enjoyed during the course of their marriage. I note as an aside, however, that, I believe the evidence is that the parties lived above the standard of living during the marriage thanks – above the standard of living that their own incomes yielded thanks largely to the generosity of [wife's] mother, Ms. Stone, who contributed not only to the parties' household needs but private schools for their children and business ventures that [husband] began.

On September 11, 1998, the trial court ordered husband to pay wife monthly spousal support of $1,500. At the time of the support decree, wife's income was $990 per month and husband's was $4,200 per month. The trial court incorporated the factual findings it made from the bench at the August 1998 support hearing into the September 1998 order.

In November 2003, the trial court terminated this spousal support order because husband showed that his financial circumstances had changed and he was unable to make the spousal support payments at that time due to his lack of employment. The November 2003 order included a reservation for wife to seek spousal support in the future. On December 2, 2005, wife filed a motion with the trial court seeking spousal support based on a change in circumstances. The trial court held a hearing on wife's motion on March 21, 2006. By his own admission, husband's gross monthly income, as disclosed on his monthly income and expense sheet, was $40,961, with a total net monthly overage of $4,009.

Wife testified as to the parties' lifestyle during their marriage and her current need for spousal support. During the course of the marriage, the parties, who were married in 1972, led a fairly affluent lifestyle, eventually spending "about a million dollars" building their own home. The parties took frequent vacations and cruises, their children attended private schools, and the parties owned, at one time, a twin-engine airplane and horses. The parties also "had new cars every couple of years." In 1991, however, the parties' standard of living began to decrease dramatically, due to the effect of the economic recession on husband's business. Wife testified that after 1991 "it was difficult to maintain any kind of lifestyle . . . ." By the time the parties divorced in 1996, they had no assets other than some personal property. From 1991 through 1996, wife's mother, who is now deceased, subsidized the parties' lifestyle, allowing them to live somewhat above their means during that time.

Following the divorce, wife incurred a number of expenses, including her son's college loans and legal fees. Eventually, wife declared bankruptcy to protect the inheritance she received from her mother from liability she had incurred in relation to the lease on the parties' marital home. Currently, wife works as the manager of a local thrift shop, making $48,500 per year, with the possibility of a $4,000 annual bonus. Wife owns a 1998 Toyota Rav-4, which is completely paid off. Wife inherited approximately $275,000 from her mother, in a "very small stock account" that she shares with the parties' two children.

Currently, wife owns a home, which she refinanced approximately two years before the hearing in this case in order to pay legal fees, credit card debts, and make a substantial payment towards her son's college loans. Wife has no savings and no retirement accounts, and has a mortgage on her home for "about . . . $231,000." According to wife's monthly income and expense sheet, she has a cash flow shortfall each month of $1,584. This figure does not account for funds needed to plan for retirement or for expenditures such as a new automobile. Moreover,

during the approximately three years between the termination of support in 2003 and the hearing in this case, wife's financial situation had worsened.

The trial court made factual findings and legal conclusions from the bench at a hearing on April 7, 2006, which were later incorporated into the May 12, 2006 order, from which this appeal was taken. The trial court noted that "[t]he parties lived above their means thanks largely to the generosity of [wife's] mother." The court further found that husband "made more monetary contributions to the marriage than [wife][,]" but that wife "made more nonmonetary contributions to the marriage." In 2003, husband "was underemployed and . . . an abatement of spousal support was warranted." At the time of this hearing, however, husband was earning more than $40,000 per month. Thus, the trial judge found a material change in circumstances existed since husband received an abatement from spousal support in 2003.

The trial court also found that wife's income and expense statement showed a deficit of $1,584 even though her post-divorce standard of living was much reduced from that which she enjoyed during the marriage. The court also stated that while the original trial court that entered the 1998 spousal support order did not "really address in detail the affluent nature of the standard of living," it found the standard of living "very affluent . . . [e]ven discounting somewhat to reflect the fact that [the prior trial court] found the parties were living above their means . . . ." The trial court then awarded wife $3,500 per month in spousal support. The court noted that, while husband's large income "does not mean that [wife] is entitled to more spousal support than she got in 1998 . . . his current income is . . . a factor the Court can consider in determining the appropriate level of spousal support."

II. ANALYSIS

Standard of Review

In reviewing a spousal support award, we are mindful that the trial court has broad discretion in awarding and fixing the amount of spousal support. Brooks v. Brooks, 27 Va. App. 314, 317, 498 S.E.2d 461, 463 (1998). Accordingly, our review is limited to determining whether the trial court clearly abused its discretion. Gamble v. Gamble, 14 Va. App. 558, 574, 421 S.E.2d 635, 644 (1992). In exercising its discretion, the trial court must consider all the factors enumerated in Code § 20-107.1(E) when fashioning its award. Miller v. Cox, 44 Va. App. 674, 679, 607 S.E.2d 126, 128 (2005). The trial court's decision is presumed correct and will not be disturbed unless some injustice has been done. Stubblebine v. Stubblebine, 22 Va. App. 703, 473 S.E.2d 72 (1996) (citing Steinburg v. Steinburg, 11 Va. App. 323, 329, 398 S.E.2d 507, 510 (1990)).

Spousal Support Generally

Spousal support exists to "provide a sum for such period of time as needed to maintain the spouse in the manner to which the spouse was accustomed during the marriage, balanced against the other spouse's ability to pay." Blank v. Blank, 10 Va. App. 1, 4, 389 S.E.2d 723, 724 (1990) (citing Lapidus v. Lapidus, 226 Va. 575, 580, 311 S.E.2d 786, 789 (1984)). The trial court must make the award "upon the basis of the circumstances disclosed by the evidence at the time of the award." Id.

Code § 20-109 provides that "upon [the] petition of either party the court may increase . . . spousal support and maintenance . . . as the circumstances may make proper." The party moving for a modification of support payments must prove "both a material change in circumstances and that this change warrants a modification of support." Schoenwetter v. Schoenwetter, 8 Va. App. 601, 605, 383 S.E.2d 28, 30 (1989). The material change "must bear

- 5 -

upon the financial needs of the dependent spouse or the ability of the supporting spouse to pay."

Hollowell v. Hollowell, 6 Va. App. 417, 419, 369 S.E.2d 451, 452 (1988).

<u>Evidence of Wife's Need</u>

Initially, husband argues that the trial court abused its discretion in awarding monthly

spousal support in the amount of $3,500, when the wife's income and expense statement showed

a monthly deficit of $1,584.  Our review of the record, however, reveals that the trial court

properly acted within its discretion in making its award.

In making its spousal support award, the trial court was obliged to consider the factors

listed in Code § 20-107.1(E).  The factors particularly relevant to this appeal are:

1.  The obligations, needs and financial resources of the
parties, including but not limited to income from all
pension, profit sharing or retirement plans, of whatever
nature;

2.  The standard of living established during the marriage;

3.  The duration of the marriage; [and]

      \*     \*     \*     \*     \*     \*     \*

13.  Such other factors, including the tax consequences to each
party, as are necessary to consider the equities between the
parties.

Here, the trial court specifically focused on the parties' standard of living during the

marriage, husband's current monthly income, and wife's obligations and needs.  The court heard

unrebutted evidence that the parties enjoyed a very affluent lifestyle for the first twenty years of

their marriage, including new cars, frequent vacations, private schools for the children, expensive

homes, and the ownership of horses and an airplane.  The trial court also heard evidence that

wife had incurred significant debts and legal expenses following the divorce and subsequent

termination of the original support order.  Wife had, since the time of the divorce, been living in

circumstances much reduced from those in the marriage, and her financial situation deteriorated

even further following the spousal support termination in 2003. Finally, the court heard that husband had recently enjoyed success in his business, and determined that he was once again able to pay spousal support and should pay support in the amount of $3,500 to make wife's standard of living more in keeping with that enjoyed in the marriage.

The statute requires that the trial court consider, *inter alia*, both the lifestyle of the parties and the duration of the marriage in determining the amount of spousal support. Here, the parties experienced significant ups and downs in their financial condition during their marriage, but, overall, they lived quite comfortably. The trial court properly considered the parties' lifestyle throughout the duration of the marriage. Thus, we are unable to say that the trial court abused its discretion in awarding wife $3,500 per month in spousal support in light of the parties' marital lifestyle and wife's demonstrated financial need.

Law of the Case

Husband also argues that the trial court erroneously failed to follow the law of the case doctrine when it found that the parties had a very affluent lifestyle during their marriage. After reviewing the record in this case, we determine that this argument is without merit.

Initially, we note that "the judgment of the trial court is presumed correct" on appeal. Johnson v. Commonwealth, 12 Va. App. 391, 396, 404 S.E.2d 384, 387 (1991). The party alleging reversible error has the burden "to show by the record" that the alleged error occurred. Id. Our Supreme Court has defined the law of the case doctrine: "[w]here there have been two appeals in the same case, between the same parties, and the facts are the same, nothing decided on the first appeal can be re-examined on a second appeal." Steinman v. Clinchfield Coal Corp., 121 Va. 611, 620, 93 S.E. 684, 687 (1917). The Court further explained, "[r]ight or wrong, [the decision] is binding on both the trial court and the appellate court, and is not subject to re-examination by either. For the purpose of that case, though only for that case, the decision on

the first appeal is law." Id. We have also applied the law of the case doctrine to hold that an unchallenged divorce decree becomes the law of the case and is not subject to later modifications. Hastie v. Hastie, 29 Va. App. 776, 782, 514 S.E.2d 800, 803 (1999) (citing Norris v. Mitchell, 255 Va. 235, 240, 495 S.E.2d 809, 812 (1998)).

The language husband relies on in the original trial court's findings begins with the phrase, "I note as an aside . . ." and explains its belief that, during the last five years of their marriage, the parties lived somewhat above their means due to wife's mother's financial assistance. The Virginia Supreme Court has stated in the past that "we will not fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied." Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977). Likewise, we will not do so here.[1] The trial judge that entered the first support decree in 1998 made very limited factual findings as to the parties' lifestyle during their marriage, and this statement hardly indicates a factual finding; rather it is more in the nature of dicta. There is no basis on this record to determine that the 2006 trial court violated the law of the case doctrine in its findings regarding the parties' marital lifestyle. Thus, we hold that the trial court did not violate the law of the case doctrine.

### "Parental Generosity Rule"

Finally, husband argues that the trial court's consideration of the facts that he makes ten times what he made in 1998 and owns a home worth $1.165 million indicates that the trial court

---

[1] Assuming *arguendo* that the trial court's comment constituted a finding of fact, it only dealt with the source of funds that allowed the parties to maintain their affluent lifestyle. While wife's mother's largess may be relevant in determining the husband's ability to support that lifestyle after the divorce, it has no bearing on the trial court's determination of the party's standard of living prior to the divorce.

erred by allegedly imposing the "parental generosity rule" in a spousal support context.[2]

Husband, however, has not established that the trial court erroneously applied this principle below.

The only legal authority husband cites for his proposition that the trial court applied the parental generosity rule in this case is Cole v. Cole, 409 A.2d 734 (Md. Ct. App. 1979). Cole is inapposite to this case, and we are therefore not persuaded that Cole should guide our decision here. Crucially, the Maryland Court of Appeals determined that

> there [was] nothing in the record to indicate that the initial award [of spousal support] was not commensurate with the standard of living to which the [wife] was then entitled; nor indeed, is there anything in the record to indicate that the initial award together with her own resources are now inadequate to enable [wife] to maintain that standard.

Id. at 740. In sharp contrast, however, the record here is replete with evidence indicating that wife's resources are inadequate to enable her to maintain the standard of living she enjoyed during the parties' marriage.

As discussed *supra*, Code § 20-107.1(E), which governs spousal support awards, requires courts to base their spousal support awards on a series of factors, including the parties' needs, obligations, and financial resources existing at the time of the spousal support award. In this case, wife had incurred significant expenses and liabilities during the interim between the termination of spousal support and her petition for spousal support. Further, she had not been able to provide for her own retirement or maintain her standard of living. While wife's income

---

[2] In Conway v. Conway, 10 Va. App. 653, 395 S.E.2d 464 (1990), we accepted the notion that a parent's increased income is a sufficient reason to increase child support. We reasoned that this was appropriate because "[c]hild support awards are based not solely upon need, but also upon the ability to provide support. The parties' children should not be expected merely to survive while the non-custodial parent, who has an ability to provide for more than bare necessities, lives in comfort or affluence." Id. at 658, 395 S.E.2d at 466. Thus, we concluded, that a child should be "the beneficiary of his parent's generosity" when the parent has the means to provide over and above the child's basic needs. Id. at 658, 395 S.E.2d at 467.

had admittedly increased somewhat during that time, we cannot say that the trial court abused its discretion in finding that her need was greater than the $1,500 per month awarded in 1998 — almost ten years ago.  Because there is no injustice in the trial court's decision, we will not disturb its determination.

### III.  CONCLUSION

For the reasons discussed above, we affirm the decision of the trial court.

<u>Affirmed.</u>