***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rideout and the briefs and arguments before the Full Commission. The appealing parties have shown good grounds to reconsider the evidence, and upon reconsideration, the Full Commission affirms in part and modifies in part the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. At all relevant times, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At all relevant times, an employer-employee relationship existed between plaintiff and defendant-employer.
3. At all relevant times, defendant-employer was insured for injuries sustained under the Workers' Compensation Act by Sentry Insurance Co., Inc.
4. Defendants filed a Form 60 admitting the compensability of plaintiff's injury by accident on February 16, 2004.
5. All relevant Industrial Commission forms were received into evidence as Stipulated Exhibit #2.
6. All medical records relating to plaintiff's back injury and treatment were received into evidence as Stipulated Exhibit #3.
7. Medical rehabilitation reports were submitted by the parties post-hearing and were designated Stipulated Exhibit #4.
8. Plaintiff's average weekly wage was $783.53, which yields a compensation rate of $522.38.
9. The issues before the Commission are whether plaintiff's part-time employment as a press operator for defendant-employer was suitable employment; whether defendants unilaterally and without permission or Order of the Commission reduced plaintiff's benefits and, if so, whether plaintiff is entitled to payment of the unpaid difference and a 10% penalty for late payment for those sums; whether plaintiff is required to make any election of remedies at this *Page 3 
time; whether defendants should be compelled to provide vocational services to plaintiff; and whether plaintiff unjustifiably refused to comply with medical treatment.
 ***********
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 45-years old and had worked for defendant-employer for the last 14 years as a press operator. As of the date of the Deputy Commissioner's hearing, plaintiff continued to work on a part-time basis for defendant-employer. He has worked for 22 years total for various companies as a press operator. Prior to that, plaintiff was a professional musician, playing banjo in bluegrass bands.
2. Immediately prior to his admittedly compensable low back injury of February 16, 2004, plaintiff ran the 11-inch pack press. He worked the second shift, which was ten hours per day, four days per week. His pay rate was $14.85 per hour and he worked substantial overtime.
3. Running the pack press entailed reviewing the instructions for the printing job plaintiff was beginning, then installing the plate on the press. The plate is a thin sheet of aluminum with the image to be printed, weighing two or three ounces and sized for the particular press. Plaintiff then filled the press with ink and obtained the appropriate stacks of paper for that particular job. There are several sizes of paper for the 11-inch press. The paper is usually 7 inches wide and 11 inches long, but can be up to 14 1/2 or 14 7/8 inches long and is manufactured in a continuous web that runs through the press. The paper is stored either on the floor or on shelves approximately five feet high. The paper weighs 27 pounds for a boxed stack of 11-inch paper. Loading the paper on the press, processing it and unloading it requires lifting *Page 4 
each stack four times. When plaintiff ran the 11-inch press, he had 14 to 27 jobs per day, each job requiring two to 26 boxes of paper, depending on how many sheets and the weight and thickness of the paper to be run.
4. The work involved constant standing, with frequent reaching to work on the press or to retrieve paper from the shelves. If the paper to be retrieved was on the floor, plaintiff bent or squatted to get it. If the continuous web of paper through the press broke, plaintiff had to squat to reconnect it.
5. On February 16, 2004, plaintiff was carrying a stack of paper when he slipped on a box on the floor, falling and landing on his left hip and shoulder. He immediately had severe pain in his left hip and lesser pain in the left shoulder. Plaintiff's left leg was numb and his right leg was hurting. He was taken to the emergency room by ambulance. He was treated by Dr. William Primos and Dr. Alfred Rhyne of OrthoCarolina. Previously, Dr. Rhyne performed surgery on plaintiff after a back injury at defendant-employer and had returned plaintiff successfully to full-time full-duty work on the pack press.
6. After conservative measures failed, Dr. Rhyne performed microdiskectomies at L4-5 and L5-S1 on June 8, 2004. On October 29, 2004, Dr. Rhyne returned plaintiff to work four hours a day with a limitation of 40 pounds lifting and limited squatting and bending. Due to continuing problems, the weight restriction was reduced to 25 pounds on December 17, 2004. Dr. Rhyne discussed with plaintiff the possibility of a lumbar fusion.
7. Plaintiff was originally returned to work on the 11-inch press, but had difficulty lifting the 27-pound boxes of paper. As a result, on March 22, 2006, Dr. Rhyne changed plaintiff's restrictions to 20 pounds lifting, continuing with four hours of work per day. These were permanent restrictions. Dr. Rhyne found that plaintiff was at maximum medical *Page 5 
improvement as of March 22, 2006, and that plaintiff has a 15% permanent functional impairment to his back as a result of the compensable injury by accident.
8. The permanent restrictions limited plaintiff to working a single press, the 7-inch pack press, as the boxes of paper for this smaller press weigh 17 to 19.5 pounds. The 7-inch press is otherwise operated in the same manner as the 11-inch press. Defendant-employer has three 11-inch presses, but only one 7-inch press. The job tasks entail some duties that are beyond plaintiff's assigned restrictions. He cannot empty the box of scrap paper at the end of each press run. He cannot get some of the heavier paper down from the shelf and has to have someone else set the paper up on the press for him. The lifting in excess of plaintiff's restrictions can be a substantial part of the job, according to defendant-employer.
9. Although plaintiff is allowed by his medical restrictions to work four hours per day, defendant-employer frequently does not have enough work for the 7-inch press to keep plaintiff busy for that time period. In those situations, plaintiff is sent home. Due to the irregularity of the work available, plaintiff calls in or is called by his boss on a daily basis to let plaintiff know if he is needed and, if so, what time he should come into work.
10. For his four hours at work, plaintiff stands constantly, except in between jobs he sometimes has a chance to sit down on a nearby table. There is no chair or stool provided for him at the press. The job task that causes plaintiff the most pain is the lifting, which results in pressure and pain in his lower back, left hip and usually makes his left leg numb. By the end of his four hours, plaintiff is "pretty drained." He calls in sick due to back pain about once a month. He is allowed to take sick time or vacation for these absences, if he has any leave. Plaintiff is also concerned about driving on the interstate to work, so he does not take pain medication before he drives to work. *Page 6 
11. In the 11 years plaintiff worked for defendant-employer before this compensable injury, defendant-employer had never hired a part-time press operator. Darren Van Cleve, owner of defendant-employer, testified that in the three years since plaintiff's injury, he hired one part-time press operator who was let go after 90 days when it became clear there was not enough work to justify his employment. Mr. Van Cleve also testified that he would expect any new hire to learn to run all the presses.
12. Although plaintiff works a maximum of 20 hours per week, defendant-employer gives him access to health insurance for which defendant-employer pays 90% of the premium, a 401(k) plan, dental insurance, eye insurance and vacation and sick days. Defendants have paid temporary partial disability compensation to plaintiff since he began working reduced hours for defendant-employer.
13. Both plaintiff and defendants hired vocational experts who submitted reports and testimony. The evidence presented by Jane Howard and Leanna Hollenbeck showed that very few printing companies ever hire part-time employees and none indicated that part-time work was currently available. Of those who had hired part-time employees in the past, most required lifting beyond plaintiff's restrictions and few were willing to discuss pay rates. Ms. Howard acknowledged that it is difficult to find part-time jobs that provide benefits such as health insurance. Ms. Howard and Ms. Hollenbeck stated and the Full Commission finds that vocational rehabilitation services would be helpful to assist plaintiff in ascertaining realistic re-employment goals and to provide guidance in further education, retraining or job search to reduce his disability to earn wages. Defendants refused to provide vocational rehabilitation assistance to plaintiff despite a request by plaintiff's attorney. *Page 7 
14. Dr. Rhyne testified that if plaintiff did not have to perform the lifting tasks associated with the job at defendant-employer and could find a sedentary position, he may be able to handle an eight-hour per day job.
15. Plaintiff conducted a reasonable job search on his own, which included skills testing at Cleveland Community College and job search in several areas of his interest and expertise, including the printing industry, machining, music and gunsmithing.
16. The Commission finds that the part-time press operator job for defendant-employer is not suitable employment because the job is not physically suitable for plaintiff, the hours are irregular and not guaranteed, the job is limited to one small press out of four pack presses at the plant, defendant-employer provides plaintiff access to a range of benefits not normally associated with part-time employment and provides maximum wages of approximately 38% of plaintiff's pre-injury earnings and the job is not a position available in the competitive labor marketplace.
17. Based upon the greater weight of the competent evidence, the Full Commission finds that, due to his permanent restrictions arising from his compensable back injury, plaintiff requires special assistance and accommodations in order to perform his job duties. The assistance and accommodations provided by defendant-employer to plaintiff are above and beyond those provided to other employees. Furthermore, if plaintiff was no longer able to perform his job or was released from defendant-employer's employment for whatever reason, he could not do a job with similar physical demands elsewhere without the accommodations or assistance that defendant-employer is presently providing. Therefore, the Full Commission finds that the part-time press operator position is not suitable employment and that the wages earned are not indicative of plaintiff's wage earning capacity. *Page 8 
18. Defendants admitted the compensability of this claim by filing a Form 60 on April 1, 2004. Pursuant to the Form 60, defendants paid temporary total disability compensation to plaintiff. On November 11, 2004, defendants filed a Form 28T which erroneously indicated that plaintiff had returned to work at the same or greater wages, but also indicated that defendants were paying temporary partial disability compensation to plaintiff for 20 hours of work per week. On January 11, 2006, defendants filed a Form 62 and reinstated payment of total disability compensation to plaintiff while he was out of work during a trial of a spinal cord stimulator. Thereafter, when plaintiff returned to work on a part-time basis, defendants resumed payment of partial disability compensation without submitting a form and obtaining Commission approval for the reduction in compensation.
19. Defendants allege that plaintiff failed to cooperate with medical treatment when he declined lumbar fusion surgery. Defendants' adjuster, David Root, testified that he did not ask plaintiff to have this surgery, so defendants have abandoned this issue. Although the possibility of a lumbar fusion was discussed with plaintiff, his treating surgeon, Dr. Rhyne, indicated that he would expect approximately a one-third chance that plaintiff's pain would improve, a one-third chance it would stay the same and a one-third chance he would get worse. The second opinion surgeon, Dr. Belanger, recommended the surgery as a "last resort." Plaintiff's decision not to have this surgery was a medically reasonable decision for him to make and the Commission finds that plaintiff has not failed to cooperate with medical treatment.
20. Defendants have not defended this action without reasonable grounds.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following: *Page 9 
 CONCLUSIONS OF LAW
1. On February 16, 2004, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. In Peoples v. Cone Mills Corp., 316 N.C. 426, 342 S.E.2d 798
(1986), the Supreme Court stated:
 The Workers' Compensation Act does not permit [defendant] to avoid its duty to pay compensation by offering an injured employee employment which the employee under normally prevailing market conditions could find nowhere else and which [defendant] could terminate at will or, as noted above, for reasons beyond its control. 316 N.C. at 439, 342 S.E.2d at 806.
The test is whether the proffered employment is so modified because of the employee's limitations that is not ordinarily available in the competitive job market. Id. Plaintiff has established that the position offered by defendant-employer and in which plaintiff is currently working, has been so modified that it is not ordinarily available in the competitive job market.
3. Disability within the North Carolina Workers' Compensation Act means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment. N.C. Gen. Stat. § 97-2(9). In order to obtain compensation, plaintiff has the burden of proving the existence and extent of his disability.Hilliard v. Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). In order to support a conclusion of disability, the Commission must find (1) that plaintiff was incapable after his injury of earning the same wages he earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he earned before his injury in any other employment, and (3) that plaintiff's incapacity to earn was caused by his injury. Id. *Page 10 
4. In the case at hand, plaintiff's part-time employment as a press operator for defendant-employer is not suitable employment and therefore the wages he earned in this part-time employment do not establish post-injury wage earning capacity. Peoples v. Cone Mills Corp.,supra. Therefore, plaintiff is totally disabled and is entitled to total disability compensation at the rate of $522.38 per week from November 1, 2004 until further Order of the Commission. N.C. Gen. Stat. § 97-29. This compensation is subject to a deduction for the total disability compensation already paid to plaintiff for the period from January 11, 2006 until he returned to part-time work for defendant-employer.
5. The payment of wages by defendant-employer and of partial disability by defendant-carrier were due and payable when made and therefore, pursuant to N.C. Gen. Stat. § 97-42, defendants are not be entitled to a credit. Kisiah v. W.R. Kisiah Plumbing, 124 N.C. App. 72,476 S.E.2d 434 (1996), disc. rev. denied, 345 N.C. 343, 483 S.E.2d 169
(1997). However, even though no credit should be awarded, an employer is not required to make duplicative payments of benefits payable under the Workers' Compensation Act and an injured worker cannot receive more than he is entitled to receive by statute. Moretz v. Richards Associates,Inc., 316 N.C. 539, 342 S.E.2d 844 (1986); Estes v. N.C. StateUniversity, 102 N.C. App. 52, 404 S.E.2d 384 (1991). The Commission concludes that plaintiff has received all the compensation to which he was entitled and therefore the Commission in its discretion holds that defendants are entitled to a credit for wages and partial disability compensation paid to plaintiff during the period plaintiff has continued to work for defendant-employer on a part-time basis.
6. Plaintiff is entitled to have defendants provide reasonable vocational rehabilitation services. N.C. Gen. Stat. §§ 97-2(19) and97-25. *Page 11 
7. Defendants unilaterally and without permission or Order of the Commission reduced plaintiff's benefits in violation of N.C. Gen. Stat. § 97-18(b) and therefore are subject to sanctions. Rule 802, N.C. Workers' Compensation Rules.
8. Plaintiff is not entitled to payment by defendants of a 10% penalty for late payment of compensation. N.C. Gen. Stat. § 97-18(g).
9. Plaintiff is entitled to all medical expenses incurred or to be incurred as a result of his compensable injury, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
10. Plaintiff did not unjustifiably refuse to comply with medical treatment. N.C. Gen. Stat. § 97-25.
11. The defense of this claim was reasonable and not stubborn, unfounded litigiousness and, therefore, plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1. Sparks v.Mountain Breeze Restaurant, 55 N.C. App. 55, 422 S.E.2d 353 (1992).
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below, defendants shall pay plaintiff total disability compensation at the rate of $522.38 per week from the date of this Opinion and Award until further Order of the Commission.
2. Defendants shall pay all related medical expenses incurred or to be incurred by plaintiff as the result of her injury by accident, for so long as such examinations, evaluations and *Page 12 
treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability.
3. Defendants shall provide reasonable vocational rehabilitation assistance to plaintiff.
4. An attorney's fee of 25% of the compensation awarded in paragraph 1 above is approved for plaintiff's counsel.
5. Defendants shall pay the costs, including a sanction of $500.00 payable to the Commission for the violation of N.C. Gen. Stat. §97-18(b).
This 26th day of March, 2008.
 S/______________________
 LAURA KRANIFELD MAVRETIC
 COMMISSIONER
CONCURRING:
S/______________________ BERNADINE S. BALLANCE COMMISSIONER
S/______________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1