***********
Upon review of the competent evidence of record with reference to the errors assigned, and considering the briefs and oral arguments of the parties, the Full Commission finds no good grounds to receive further evidence, or to rehear the parties or their representatives. Upon reconsideration of the evidence, the Full Commission modifies the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 *********** RULING ON MOTION
On or about May 10, 2011, Plaintiff filed with the Industrial Commission her Motion to Show Cause moving the Full Commission to enter an Order summoning Ms. Cheryl Gless, *Page 2 
adjuster for Defendant-Carrier, to appear and show cause why she should not be held in civil contempt for willful refusal to comply with the Opinion and Award by Deputy Commissioner Baddour. In support of her motion, Plaintiff contends that, Defendants did not move for a stay of Deputy Commissioner Baddour's Opinion and Award, and had not taken any action to comply with the Opinion and Award, specifically with respect to the payment of temporary total disability payments which the Deputy Commissioner ordered from May 22, 2007. In support of her Motion, Plaintiff citesRoberts v. Dixie New, Inc.,189 N.C.App. 495, S.E.2d 684 (2008) for the proposition that the clause in N.C. Gen. Stat. § 97-86 which provides for an automaticsupersedeas for claims appealed to the Court of Appeals from the Full Commission, does not apply to appeals to the Full Commission from the Opinion of a Deputy Commissioner.
In their response, Defendants contend that the controlling case on the issue raised in Plaintiff's Motion is Morales-Rodriguez v.Carolina Quality Exteriors, Inc., ___ N.C. App. ___,698 S.E.2d 91 (2010). In that case, the Court of Appeals reversed the Full Commission's assessment of a 10% late penalty pursuant to N.C. Gen. Stat. § 97-18(g) for Defendants' failure to initiate temporary total disability benefits following their appeal from the Opinion and Award of a Deputy Commissioner. Id. In reaching its decision, the Court noted that N.C. Gen. Stat § 97-85 provides 15 days from notice of the Deputy Commissioner's Opinion and Award to appeal to the Full Commission, and concluded that, because Defendants had timely appealed from the Deputy Commissioner's Opinion and Award, indemnity benefit payments did not come due until the expiration of the appeals period. Id. Defendants in the instant case contend that they timely appealed from Deputy Commissioner Baddour's Opinion and Award, and therefore, as the Court held inMorales-Rodriguez, the temporary total disability benefits ordered by the Deputy Commissioner do not become due and payable until the expiration of the appeals period. *Page 3 
On July 19, 2011, following the Full Commission oral argument in the instant case, the North Carolina Court of Appeals handed down its opinion in Norman v. Food Lion, LLC, No. COA10-1175, WL 2848648 (2011). That case involved an appeal by Defendants from an Order of the Full Commission assessing a 10% penalty against Defendants for the late payment of temporary total disability benefits ordered in a Deputy Commissioner's Opinion and Award. Defendants had timely appealed the Deputy Commissioner's award of benefits to the Full Commission, and after the Full Commission affirmed the Award, Defendants did not appeal to the Court of Appeals and paid the Award to Plaintiff within 10 days after the 30 day period permitted for appeals to the Court of Appeals. Defendants argued in support of their appeal that N.C. Gen. Stat. §§ 97-18(e) and 97-86 should be read together to find that payment of an award of the Industrial Commission does not become due until all appeals are exhausted or a party waives the right to appeal. Id. The Court of Appeals agreed, concluding, "Roberts does not control when an employer must initiate payment of a workers' compensation award, andMorales-Rodriguez established that an award is not due during the pendency of an appeal." Id. Based on the foregoing, the Full Commission concludes that Morales-Rodriguez controls the instant case and, therefore, because Defendants timely appealed Deputy Commissioner Baddour's Award of temporary total disability benefits to the Full Commission, no payment has come due with respect to that Award.Morales-Rodriguez, ___ N.C. App. at___, 698 S.E.2d at 95. Plaintiff's Motion to Show cause is therefore, DENIED.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as: *Page 4 
 STIPULATIONS
1. At all relevant times, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At all relevant times, an employer-employee relationship existed between Plaintiff and Defendant-Employer.
3. At all relevant times, Defendant-Employer was insured for injuries sustained under the Workers' Compensation Act by Key Risk Insurance Company.
4. Plaintiff's average weekly wage was $1,240.31.
5. Plaintiff was terminated from her light-duty position for reasons unrelated to her compensable injury.
 *********** EXHIBITS
The following exhibits were admitted into evidence:
 (a) Stipulated Exhibit 1: Pre-Trial Agreement
 (b) Stipulated Exhibit 2: Plaintiff's Medical Records
 (c) Stipulated Exhibit 3: Medical Rehabilitation Reports
 (d) Stipulated Exhibit 4: Vocational Rehabilitation Reports
 (e) Stipulated Exhibit 5: Industrial Commission Forms and Documents
 (f) Stipulated Exhibit 6: Plaintiff's Discovery Responses
 (g) Stipulated Exhibit 7: Job Description
 (h) Stipulated Exhibit 8: Web Page from Plaintiff's Current Employer
 *********** ISSUES *Page 5 (a) To what additional disability compensation, if any, is Plaintiff entitled?
 (b) Should Plaintiff be required to continue vocational rehabilitation?
 (c) Whether Plaintiff is entitled to chiropractic treatment?
 (d) Have Defendants defended this claim without reasonable grounds?
 ***********
Based upon the evidence of record, the undersigned makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was 68 years of age.
2. Plaintiff was employed by Defendant-Employer as the manager of its cardiopulmonary department. Plaintiff worked for Defendant-Employer for 28 years.
3. Plaintiff's primary job duty was to perform echocardiograms. This required moving patients to and from the echocardiogram lab and transferring them from a stretcher or wheelchair to the echocardiogram bed. She also was responsible for maintaining the echocardiogram department, hiring, salaries, policies and procedures, CPR, stocking supplies, and responding to codes. Plaintiff was also the back-up person on-call 24 hours a day in case an ambulance transport was needed or an employee was injured. As the department manager, Plaintiff was required to work for employees who did not show up or who could not work.
4. Plaintiff generally worked ten hours per day, five days per week. Plaintiff had to report to work early so that she could complete the necessary paperwork to keep the echocardiogram report up to date before she started seeing her echocardiogram patients. Plaintiff was the primary employee and the only full-time employee who performed echocardiograms at the hospital. *Page 6 
5. While working for Defendant-Employer, Plaintiff has always held concurrent part-time employment providing contract home health care for patients requiring oxygen or using Bi-PAP (night breathing) machines. For several years prior to her injury, Plaintiff performed this work for Wannamaker Drugs, a drugstore/durable medical equipment company located in Cheraw, South Carolina.
6. On March 20, 2006, as she was assisting a patient in transferring from an echocardiogram stretcher to a wheelchair, Plaintiff felt a "pop" in her right knee. Defendants accepted Plaintiff's right knee injury as compensable via an Industrial Commission Form 60 dated November 20, 2006.
7. On March 22, 2006, Plaintiff began treating for her right knee injury with Dr. John B. Meade, an orthopedic surgeon at OrthoCarolina in Monroe, North Carolina. From that date until November 9, 2006, Dr. Meade treated Plaintiff conservatively with pain medications, physical therapy, and other non-operative measures. Plaintiff worked full-duty during this period.
8. Due to continued complaints of pain and limitation of function, Plaintiff underwent an arthroscopic chondroplasty with Dr. Meade on November 9, 2006. Following the surgery, Plaintiff was taken out of work by Dr. Meade and received temporary total disability compensation.
9. Plaintiff's right knee condition worsened following the surgery. Dr. Meade eventually diagnosed Plaintiff with Complex Regional Pain Syndrome (C.R.P.S.).
10. Dr. Meade offered to treat Plaintiff with stellate ganglion block injections, which he testified is considered the definitive treatment for her condition. Plaintiff refused this treatment due to fear of complications, so instead, Dr. Meade continued to attempt to optimize *Page 7 
other managements, including physical therapy, stimulation, and medication. Plaintiff did not show much improvement with these managements.
11. On March 21, 2007, Dr. Meade placed restrictions on Plaintiff's work. The restrictions included no work for more than four hours per day starting March 5, 2007, no lifting greater than ten pounds, no pushing or pulling greater than 20 pounds, no standing or walking for more than 20 minutes per hour, and no ladder or stair climbing. These restrictions also applied to Plaintiff's job at Wannamaker Drugs.
12. Plaintiff returned to work at light-duty for four hours per day on March 5, 2007, and Defendants began paying temporary partial disability compensation. Plaintiff was assigned to work on the cardiopulmonary lab's accreditation, which occurred every three years. As Plaintiff was being reaccredited herself, she did perform some echocardiograms in connection with her reaccreditation process, but her position at this time was primarily sedentary involving completing paperwork. Plaintiff was not required to perform many of the tasks she was responsible for prior to her injury, including moving or transferring patients, stocking supplies, or responding to codes.
13. While working in the light-duty position, Plaintiff was advised that, if she was unable to return to her full-time job by May 28, 2007, she would be terminated. Hospital policy provided that, if an employee did not return to full-duty within six months, their position would be posted for hire. Plaintiff was terminated on May 22, 2007, more than six months from the time she was written out of work in November 2006, for reasons which Plaintiff stipulated are unrelated to her compensable injury. When Plaintiff was terminated, she had completed the accreditation project. *Page 8 
14. Following her termination, Defendants continued to pay Plaintiff temporary partial disability compensation based on Plaintiff's four hour work restriction.
15. Based upon the preponderance of the evidence in view of the entire record, the Full Commission finds that the four hour per day light-duty position that Plaintiff performed from March 5, 2007 until her termination on May 22, 2007 was not a permanent position, was not available in the competitive labor marketplace, and did not demonstrate Plaintiff's earning capacity. Following her termination, Plaintiff remained under a four hour work restriction and fully cooperated with vocational rehabilitation counselor Jacqueline Jessie to attempt to obtain suitable employment within her work restrictions. Ms. Jessie has recommended that Plaintiff retrain to become a physician's assistant, and Plaintiff is in agreement with this vocational rehabilitation plan. The Full Commission finds, based upon the preponderance of the evidence in view of the entire record, that continuing vocational rehabilitation with Jacqueline Jessie would be beneficial to Plaintiff and that Plaintiff's efforts to find suitable employment have been reasonable.
16. Dr. Meade opined during his deposition on July 1, 2010, which was several months after the hearing before the Deputy Commissioner, that Plaintiff's four hour per day work restriction is no longer necessary, and that Plaintiff is capable of working eight hours per day, if the physical requirements of the job do not exceed Plaintiff's capabilities as demonstrated by the functional capacity exam. Dr. Meade's opinion was based on the level of activity recommended by the functional capacity exam and his knowledge of Plaintiff's deficits.
17. With Dr. Meade's lifting of the four hour work restriction, vocational rehabilitation has an increased chance of success. *Page 9 
18. During an office visit with Dr. Meade on October 1, 2007, Plaintiff inquired about a referral for chiropractic care. Dr. Meade did not make a referral and questioned the efficacy of chiropractic treatment for Plaintiff's knee condition in his medical note.
19. Defendants have not engaged in stubborn, unfounded litigiousness as they have raised legitimate issues for determination and legitimate defenses.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On March 20, 2006, Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with Defendant-Employer. N.C. Gen. Stat. § 97-2(6).
2. In Peoples v. Cone Mills Corp.,316 N.C. 426, 342 S.E.2d 798 (1986), the North Carolina Supreme Court stated:
 The Workers' Compensation Act does not permit [defendant] to avoid its duty to pay compensation by offering an injured employee employment which the employee under normally prevailing market conditions could find nowhere else and which [defendant] could terminate at will or, as noted above, for reasons beyond its control. 316 N.C. at 439, 342 S.E.2d at 806.
The test is whether the proffered employment is so modified because of the employee's limitations that it is not ordinarily available in the competitive job market. Id. In the instant case, Plaintiff has established that the part-time, light-duty position she worked in upon her return to work on March 5, 2007 has been so modified that it is not ordinarily available in the competitive job market. As Plaintiff's part-time, light-duty employment following her return to *Page 10 
work on March 5, 2007 was not suitable employment, the wages she earned in that employment do not establish post-injury wage earning capacity. Id.
3. In determining whether the Plaintiff's termination from employment on May 22, 2007 would preclude her from receiving workers' compensation benefits, initially Defendants must prove that (1) Plaintiff was terminated for her conduct, (2) the same misconduct would have resulted in the termination of a non-disabled employee and (3) the termination was unrelated to Plaintiff's compensable injury. An employer's successful demonstration of such evidence is "deemed to constitute a constructive refusal" by the employee to perform suitable work, a circumstance that would bar benefits for lost earnings. McRae v. Toastmaster, Inc.,358 N.C. 488, 597 S.E. 2d 695, (2004). In the instant case, Plaintiff has stipulated that she was terminated from her light-duty position for reasons unrelated to her compensable injury and Defendants would have effectively met their burden of showing that Plaintiff constructively refused suitable employment when she was terminated on May 22, 2007, if her employment had been suitable, but it was not. Id.
4. Even if Plaintiff had been terminated due to constructive refusal of suitable employment, Plaintiff would be entitled to benefits, despite her termination, if she can demonstrate that the work-related injury, and not the circumstance of the termination, prevented her from either performing alternative duties or finding comparable employment. Id. at 494, 597 S.E.2d at 699.
5. An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that she is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that she is capable of some work, but that she has, after a reasonable effort, been unsuccessful in her efforts to obtain employment; (3) *Page 11 
evidence that she is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that she has obtained other employment at wages less than her pre-injury wages. Demery v. Perdue Farms, Inc.,143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). When a plaintiff meets her burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms, Inc.,143 N.C. App. 259, 545 S.E.2d 485, (2001).
6. Plaintiff has produced persuasive evidence establishing that she has made reasonable efforts to find suitable employment within her restrictions, but has been unsuccessful. Furthermore, Plaintiff has fully cooperated with vocational rehabilitation efforts to return her to suitable employment through retraining to be a physician's assistant. Therefore, Plaintiff has carried her burden of proving that she is disabled as a result of the March 20, 2006 injury at work and is entitled to temporary total disability compensation from May 22, 2007 and continuing until legally terminated by her return to suitable employment or Order of the Commission. N.C. Gen. Stat. § 97-29 (2007); Russell,108 N.C. App. 762, 425 S.E.2d 454 (1993).
7. Defendants have not produced sufficient evidence to prove that suitable jobs are available for Plaintiff and that Plaintiff is capable of obtaining a suitable job, taking into account both her physical and vocational limitations. Demery,143 N.C. App. 259, 545 S.E.2d 485 (2001).
8. The temporary partial disability benefits paid by Defendants to Plaintiff were due and payable when made and therefore, pursuant to N.C. Gen. Stat. § 97-42, Defendants are not *Page 12 
entitled to a credit for those payments. Kisiah v. W.R. KisiahPlumbing, 124 N.C. App. 72, 476 S.E.2d 434 (1996),disc. rev. denied, 345 N.C. 343, 483 S.E.2d 169 (1997). However, even where it is determined that payments were due and payable when made, and therefore no credit should be awarded, an employer is not required to make duplicative payments of benefits payable under the Workers' Compensation Act. Moretz v.Richards Associates, Inc., 316 N.C. 539, 342 S.E.2d 844 (1986);Estes v. N.C. State University,102 N.C. App. 52, 404 S.E.2d 384 (1991). In the instant case, although the temporary partial disability benefits paid to Plaintiff were due and payable when the payments were made, failure to award Defendants an offset, or deduction, for temporary partial disability benefits paid to Plaintiff after May 22, 2007 will effectively require Defendants to make duplicative payments of benefits to Plaintiff. Accordingly, Defendants are entitled to an offset, or deduction, for temporary partial disability compensation paid to Plaintiff after May 22, 2007.
9. Plaintiff is entitled to payment of medical expenses incurred or to be incurred as a result of her compensable injury as may reasonably be required to effect a cure, provide relief, or lessen the period of disability. As there is evidence that vocational rehabilitation efforts may lessen the period of Plaintiff's disability, Plaintiff is entitled to continued vocational rehabilitation. N.C. Gen. Stat. § 97-25.
10. Defendants did not defend this action without reasonable grounds and, therefore, Plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following: *Page 13 
 AWARD
1. Subject to the attorney's fee approved below and the offset owed Defendants for temporary partial disability compensation paid to Plaintiff after May 22, 2007, Defendants shall pay temporary total disability compensation to Plaintiff from May 22, 2007 and continuing until legally permitted to terminate compensation by Plaintiff's return to suitable employment or Order of the Commission. As much of said compensation as has accrued shall be paid in a lump sum.
2. Defendants shall pay for medical expenses incurred or to be incurred as a result of Plaintiff's compensable injury for so long as such treatment may reasonably be required to effect a cure, provide relief, or lessen the period of disability. Defendants shall continue to provide vocational rehabilitation, and Plaintiff shall continue to cooperate with reasonable vocational rehabilitation.
3. Plaintiff's request for attorney fees pursuant to N.C. Gen. Stat. § 97-88.1 is denied.
4. A reasonable attorney's fee in the amount of twenty-five percent (25%) is hereby approved to be deducted from sums due Plaintiff and paid directly to Plaintiff's counsel in one lump sum of the accrued amount due Plaintiff and thereafter by deducting every fourth compensation check due Plaintiff.
5. Defendants shall pay the costs due the Commission.
This the ___ day of August 2011.
 S/_____________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING: *Page 14 
 S/________________ LINDA CHEATHAM COMMISSIONER
 S/____________________ DANNY L. McDONALD COMMISSIONER *Page 1